# 25-2505

In the United States Court of Appeals
for the Second Circuit

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

*Defendant-Appellant,*

v.

SCHOLASTIC INC.,

*Plaintiff-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

**INITIAL BRIEF FOR DEFENDANT-APPELLANT**

<div style="display: flex;">

Laura Besvinick, Esq.
BESVINICK NEVINS LLP
1115 Anastasia Avenue
Coral Gables, Florida 33134
Tel: (786) 780-1101

*Counsel for Defendant-Appellant St.
Paul Fire and Marine Insurance
Company*

Joanne M. Engeldrum, Esq.
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, NY 11556-0926
Tel: (516) 357-3000

*Counsel for Defendant-Appellant St.
Paul Fire and Marine Insurance
Company*

</div>

## RULE 26.1 DISCLOSURE STATEMENT

St. Paul Fire and Marine Insurance Company is 100% owned by The Travelers Companies, Inc. The Travelers Companies, Inc. is the only publicly traded company in the corporate family. No individual corporation owns 10% or more of the stock of The Travelers Companies, Inc.

## TABLE OF CONTENTS

RULE 26.1 DISCLOSURE STATEMENT…………………………………………..i

TABLE OF CONTENTS ................................................................................. iiii

TABLE OF AUTHORITIES…………………………………………………….iv

JURISDICTIONAL STATEMENT .........................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................2

STATEMENT OF THE CASE.................................................................................3

  A. The Scholastic Insurance Policies.........................................................3

  B. The Vanderbilt Action. .........................................................................7

   The Coverage Action...........................................................................14

  C. The Appeal. ..........................................................................................20

SUMMARY OF ARGUMENT.............................................................................21

ARGUMENT .........................................................................................................23

I. The District Court Incorrectly Held that Vanderbilt's Breach of Contract Claim was Covered Under the Travelers Umbrella Policy...........................23

  A. The Standard of Review ......................................................................23

  B. Scholastic's Failure to Make Contractually-Required Royalty Payments Is Not "the Rendering of, or Failure to Render, A Professional Service" Nor Is It a "Wrongful Act." .............................23

  C. Scholastic is Not Entitled to a Windfall. ............................................33

II. The District Court Incorrectly Failed to Allocate the Settlement Amount Between the Uncovered Breach of Contract Claim and the Trademark Infringement Claim, Necessitating Remand.................................................34

III. The District Court Incorrectly Held that Travelers Was Required to Pay the Remaining Balance of Scholastic's Defense Costs .....................................36

CONCLUSION.....................................................................................................38

CERTIFICATE OF COMPLIANCE……………………………………………….. 40

ADDENDUM

Order Denying Motion for Judgment on the Pleadings (Dkt. No. 85).

Transcript dated July 2, 2024 (Dkt.142-14).

Opinion and Order (Dkt. No. 182).

Order and Final Judgment (Dkt. No. 184).

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Albert J. Schiff Assoc., Inc. v. Flack,*
  51 N.Y.S.2d 692, 417 N.E.2d 84, 435 N.Y.S.2d 972 (N.Y. 1980)................ 24, 25

*Burroughs Wellcome Co. v. Commercial Union Ins. Co.,*
  713 F. Supp.694, 699 (S.D.N.Y. 1989).......................................................35

*Clifford Chance Ltd. Liability P'ship v. Indian Harbor Ins. Co.,*
  14 Misc. 3d 1209(A), 836 N.Y.S.2d 484 (N.Y. 2006).................................35

*David Lerner Assocs., Inc. v. Philadelphia Indem. Ins.. Co.,*
  934 F.Supp.2d 533, 541 (E.D.N.Y. 2013)....................................................24

*Evanston Ins. Co. v. Napoli Bern Ripka & Assoc., LLP,*
  2019 WL 10966201 (S.D.N.Y. Jun. 28, 2019......................................................27

*Evanston Ins. Co. v. Napoli Bern Ripka & Assoc., LLP,*
  2019 WL 10966201 (S.D.N.Y. Jun. 28, 2019) ....................................................27

*Health Net, Inc. v. RLI Ins. Co.,*
  206 Cal. App. 4th 232, 253 (2012) ........................................................32

*James River Ins. Co. v. Indian Harbor Ins. Co.,*
  418 F. Supp.3d 3, 8 (S.D.N.Y. 2019)....................................................23

*Luria Bros.  & Co. v. Alliance Assur. Co., Ltd.,*
  780 F.2d 1082, 1091 (2d Cir. 1986).......................................................34

*Miller v. Wolpoff & Abramson, L.L.P.,*
  321 F.3d 292, 300 (2d Cir. 2003).......................................................23

*Napoli Shkolnick, PLLC v. Greenwich Ins. Co.,*
  193 A.D.3d 620, 142 N.Y.S.3d 810, 2021 N.Y. Slip Op. 02499 (2021) ..............25

*Olin Corp. v. Lamorak Ins. Co.,*
    332 F. Supp. 3d 818, 848 (S.D.N.Y. 2018)............................................37

*Pacific Ins. Co., Ltd. v. Eaton Vance Mgmt.,*
    369 F.3d 584, 592 (1st Cir. 2004)..................................................31

*Platek v. Town of Hamburg,*
    24 N.Y.3d 688, 26 N.E.3d 1167, 3 N.Y.S.3d 312 (N.Y. 2015)...........35

*See, e.g., American Cas. Co. of Reading, Pa. v. Hotel*
    *& Restaurant Employees & Bartenders Union Welfare Fund,*
    113 Nev. 764, 942 P.2d 172 (Nev. 1997)............................................32

*Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford,*
    64 N.Y.2d 419, 423, 477 N.E.2d 441, 488 N.Y.S.2d 139 (N.Y. 1985).................34

*Those Certain Underwriters at Lloyd's London v. DVO, Inc.,*
    473 F.Supp.3d 236 (W.D.N.Y. 2020).................................................24

*Touchette Corp v. Merchants Mut. Ins. Co.,* 76 A.D.2d 7,
    49 N.Y.S. 952 (4th Dep't 1980)....................................... 27, 28

*Uvino v. Harleysville Worcester Ins. Co.,*
    2015 WL 925940, *7 (S.D.N.Y. Mar. 4, 2015) .................................35

*Waste Corp. of Am., Inc. v. Genesis Ins. Co.,*
    382 F. Supp. 2d 1349, 1355 (S.D. Fla. 2005)................................. 32, 33

*Wentworth Group Inc. v. Evanston Ins. Co.,*
    2021 WL 2828838 (S.D.N.Y. Jul. 8, 2021) .................................. 28, 29

*Women's Integrated Network, Inc. v. U.S. Specialty Ins. Co.,*
    2012 WL 13070116 (S.D.N.Y. Oct. 26, 2012) ............................... 26, 27

**TREATISES**

23 Appleman on Insurance 2d (Holmes ed. 2003), § 146.6[I] ...............................34

## JURISDICTIONAL STATEMENT

(A)     The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), because the amount in controversy exceeded $75,000, exclusive of interest and costs, and there was complete diversity of citizenship between Plaintiff Scholastic, Inc. ("Scholastic") and Defendant St. Paul Fire & Marine Insurance Company ("Travelers"). Scholastic is a New York Corporation with its principal place of business in New York, and is therefore a citizen of New York. Travelers is a Connecticut corporation with its principal place of business in Connecticut, and is therefore a citizen of Connecticut.

(B)     This Court has jurisdiction pursuant to 28 U.S.C. § 1291, because the Order and Final Judgment awarding a money judgment against Travelers and in favor of Scholastic, dated September 25, 2025, was a final decision of the district court disposing of all parties' claims.

(C)     This appeal is timely because the Notice of Appeal was filed October 9, 2025, within thirty (30) days of the Order and Final Judgment dated September 25, 2025.

(D)     This appeal is from a final order or judgment that disposes of all parties' claims.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Whether the Court erred in granting in part Scholastic's Motion for Summary Judgment.

2.      Whether the Court erred in denying in part Travelers' Cross-Motion for Summary Judgment.

3.      Whether the Court erred in holding that Vanderbilt's breach of contract claim is covered under the Travelers Umbrella Policy.

4.      Assuming *arguendo* that the Court erred in holding that Vanderbilt's breach of contract claim is covered under the Travelers Umbrella Policy, whether the Court further erred in failing to allocate the settlement amount between Vanderbilt's non-covered breach of contract claim and the trademark infringement claim.

5.      Whether the Court erred in holding that the settlement amount for the Vanderbilt Action is covered under the Travelers Umbrella Policy.

6.      Whether the Court erred in holding that the defense costs incurred by Scholastic defending the Vanderbilt Action prior to exhaustion of the AIG Policy are covered under the Travelers Umbrella Policy.

2

## STATEMENT OF THE CASE

This is an appeal from an Order and Final Judgment entered by the Honorable Jesse M. Furman of the United States District Court for the Southern District of New York, granting in part and denying in part cross-motions for summary judgment in a declaratory judgment action regarding insurance coverage for the outstanding defense costs and settlement amounts incurred by Scholastic in the action styled *Vanderbilt University v. Scholastic, Inc., et al.,* Case No. 3:18-cv-0046 (the "Vanderbilt Action").

### A.     The Scholastic Insurance Policies.

#### 1.  The Underlying AIG Policy.

Illinois National Insurance Company ("AIG") issued Multimedia Professional Liability Policy, number 01-589-55-94, to Scholastic for the policy period February 28, 2010 to February 28, 2011, with a $10 million limit of liability (the "AIG Policy").

With regard to coverage for "Professional Liability," the AIG Policy provided:

> We will pay amounts you are legally obligated to pay to compensate others for damages as a result of one or more claims arising from your wrongful act or that of another for whom you are legally responsible, including liability assumed under contract. The wrongful act must first take place during the policy period and in the performance of the multimedia services provided by the Named Insured and its subsidiaries.

(Dkt. No. 101-6, at 12). (Sec. I.A.).

The AIG Policy defined "wrongful act" as follows:

wrongful act means any of the following actual or alleged breaches of duty, neglects, errors, misstatements, misleading statements or omissions, including, liability therefor assumed under contract, constituting:

a. any form of defamation or other tort related to disparagement or harm to character, reputation, or feelings of any person or organization, including libel, slander, product disparagement, trade libel, infliction of emotional distress, outrage or outrageous conduct;

b. any form of invasion, infringement or interference with rights of privacy or publicity, including false light, public disclosure of private facts, intrusion and commercial appropriation of name or likeness;

c. false arrest, detention or imprisonment or malicious prosecution;

d. wrongful entry or eviction, trespass, eavesdropping or other invasion of the right of private occupancy;

e. infringement of title, slogan, trademark, trade name, trade dress, service mark, or service name;

f. infringement of copyright, plagiarism, piracy, or misappropriation of ideas under implied contract, or other misappropriation of property rights, ideas, or information;

g. unfair competition alleged in conjunction with subparagraphs e. or f. above;

h. a breach of an agreement to maintain the confidentiality of a source or material furnished by a source; or

i. *prima facie* tort in connection with material.

4

Breach of contract is not an enumerated "wrongful act." (Dkt.101-6, at 19-20).

The AIG Policy specifically excluded coverage for claims

> alleging or arising out of the dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, or gaining of any profit or advantage to which you are not legally entitled; however, we will defend claims alleging any of the foregoing conduct until there is a judgment, final adjudication, adverse admission or finding of fact against you as to such conduct at which time you shall reimburse us for claim expenses.

(Dkt. No. 101-6, at 21) (emphasis added).

Regarding the defense of claims against Scholastic, the AIG Policy provided that AIG had "the right and duty to defend" covered claims against Scholastic and that "[c]laim expenses are part of and subject to [AIG's] Limits of Liability." (Dkt. No. 101-6, at 12) (Sec. II. A.1.).

## 2. The Travelers Umbrella Policy.

Travelers issued Specialty Commercial Umbrella Liability Policy, number QK09002061, to Scholastic for the policy period February 28, 2010 to February 28, 2011, with a $25 million limit of liability (the "Travelers Umbrella Policy"). (Dkt. No. 104-1).

The Travelers Umbrella Policy included a Professional Liability Endorsement. (Dkt. No. 104-1, at 40-41). The Professional Liability Endorsement provided:

We will also pay on behalf of the Insured all sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of Professional Liability Loss that is caused by an Occurrence committed during the Policy Period, but only if:

1.      insurance for such professional liability Loss is provided by any scheduled Underlying Insurance or any Scheduled Retained Limit and then for no broader coverage than the insurance provided by that Scheduled Underlying Insurance or Scheduled Retained Limit, subject to all exclusions of this policy.

(Dkt. No. 104-1, at 40 ).

"[A]s respects Professional Liability Loss," the Travelers Umbrella Policy defined "Occurrence" as "a rendering of, or failure to render, any professional service by or on behalf of the Insured which results in Professional Liability Loss" and defined "Professional Liability Loss" as "loss caused by the rendering of, or failure to render, any professional service by or on behalf of the Insured." (Dkt. No. 104-1, at 41).

The Travelers Umbrella Policy further provided:

The applicable limits of any Scheduled Underlying Insurance or Scheduled Retained Limit shall not, for the purpose of determining when this policy applies, be reduced or exhausted by any payment with respect to Claims or Suits seeking damages which are not covered by this policy.

(Dkt. No. 104-1, at 16).

Finally, regarding the defense of claims against Scholastic, the Travelers Umbrella policy provided:

6

> We shall have the right and duty to assume control of the defense of any Claim or Suit seeking damages covered by this policy … when the Retained Limit has been exhausted by payment of judgments or settlements that would be covered by this policy.
>
> Prior to the exhaustion of the Retained Limit we shall have the right, but not the duty, to participate in the investigation, settlement or defense of any Claim or Suit seeking damages that would be covered by this policy.
>
> All expenses we incur in the defense of any Claim or Suit are in addition to the limits of insurance under this policy.

(Dkt. No. 104-1, at 16).

**B.    The Vanderbilt Action.**

On or about January 16, 2018, Vanderbilt filed the Vanderbilt Action against Scholastic. (Dkt. No. 101-20, at 37, ¶153). Shortly thereafter, Scholastic provided notice of the Vanderbilt Action to AIG and AIG agreed to defend Scholastic. (Dkt. No. 101-9). Scholastic did not provide notice to Travelers at that time. (Dkt. No. 104, at 3, ¶ 10).

**1.  Vanderbilt's Complaint.**

In the Vanderbilt Action, Vanderbilt alleged that it entered into a License Agreement with Scholastic in 1997. (Dkt. No 101-17, at 1). Vanderbilt licensed its intellectual property in an educational technology product called "Read 180" to Scholastic to permit its commercial development and availability. (*Id.*, at 1, 12, ¶¶ 28-29). In exchange, Scholastic was required to pay certain royalties to Vanderbilt. (*Id.*, at 1, 2, 12, ¶ 30). More specifically, the License Agreement required

Scholastic (and later, its assignee, Houghton Mifflin Harcourt Publishing Company ("HMH")) to pay royalties to Vanderbilt "based upon the sale or licensing of all products using or based on the Materials." The License Agreement further provided that "[f]or all sales or licenses of the Materials or Literacy Program," Vanderbilt was to be paid a percentage of "Net Sales," defined to mean "all income received by Scholastic from the sale, licensing, or other use of the Materials or Literacy Program." (Dkt. No. 101-8, at 3, 7, ¶1.7 (Definition of "Net Sales"), ¶9.1).

In the Complaint, however, Vanderbilt alleged that Scholastic and HMH had paid Vanderbilt "only … a fraction of the royalties to which it [was] entitled under the License."  (Dkt. 101-17, at 1). Based on an audit conducted by Vanderbilt, Vanderbilt alleged that Scholastic and HMH "failed to pay Vanderbilt royalties for products that Scholastic and HMH had already agreed were royalty-bearing," "failed to remit royalty payments to Vanderbilt for sales of products based on or derived from the licensed Materials," "failed to pay Vanderbilt for any royalties generated by Canadian sales of Read 180," "failed to pay royalties for the complete Read 180 Literacy Program as required by the License," and "made improper deductions from Vanderbilt's royalty payments for supposed shipping and handling costs associated with Read 180 products." (Dkt. No. 101-17, at 14-16, ¶¶ 36-41).

Vanderbilt sued Scholastic for breach of contract (Count I), declaratory judgment (Count II), trademark infringement (Count III), unfair competition

8

(Count IV), tortious interference with contract (Count VII), deceptive trade practices (Count VIII), fraud (Count IX), unjust enrichment (Count X) and accounting (Count XI). (Dkt. No. 101-17, at 37-56). With respect to the breach of contract claim, Vanderbilt alleged that Scholastic and HMH "failed to remit and/or underpaid contracted-for royalties for Read 180 and its Derivative Products pursuant to the License, and improperly deducted and carved-out from such royalty amounts due to Vanderbilt," and "caused damages to Vanderbilt in the form of under-calculated and underpaid royalties." (*Id.*, at 37-38, ¶¶ 70, 72). With respect to the trademark infringement claim, Vanderbilt alleged that Scholastic and HMH had "used one or more of Vanderbilt's Trademarks" without Vanderbilt's permission. (*Id.*, at 37, ¶ 67).

### 2. Scholastic's Motion to Dismiss and the Court's Order.

Scholastic and HMH moved to dismiss all claims against them, with the exception of Count I (breach of contract). (Dkt. No. 142-5). On or about May 28, 2019, the district court granted the motion in part and denied it in part, leaving only Counts I (breach of contract), II (declaratory judgment), III (trademark infringement) and VII (tortious interference with contract) pending against Scholastic and HMH. (Dkt. No. 142-7).

9

### 3. Scholastic's Summary Judgment Motion and the Court's Order.

On or about January 22, 2021, Scholastic and HMH moved for summary judgment in their favor on the remaining counts against them. (Dkt. Nos. 101-19, 101-20). Scholastic argued: "Although Vanderbilt has asserted a variety of tort and contract claims, the core of this dispute is Vanderbilt's contention that it has been underpaid royalties for more than twenty years under a license agreement dated January 1, 1997 with Scholastic that was assigned to HMH in 2015." (Dkt. No. 101-19, at 11). Scholastic argued that Vanderbilt's claims were barred by the applicable statutes of limitation and its interpretation of the License Agreement (to require payment of the disputed royalties) was incorrect. (*Id.*, at 14-37).

On or about April 12, 2021, Vanderbilt filed its opposition to the summary judgment motion. In describing its pending claims, Vanderbilt stated: "Vanderbilt claims [Scholastic and HMH] underpaid Vanderbilt for the royalties owed on sales of Read 180. Vanderbilt also contends that [Scholastic and HMH] breached the agreement by developing other products based on or derived from the licensed Materials, specifically System 44, FASTT Math, Math 180, and iRead, without telling Vanderbilt or paying royalties on the sale of those products." (Dkt No. 101-22, at 5). In addition to arguing that its claims against Scholastic and HMH were not time-barred, Vanderbilt argued that the License agreement entitled it to payment of the disputed royalties. (*Id.*, at 5-41). Vanderbilt argued: "The contract

10

makes clear that royalties are owed on *products,* not just the student software."

(*Id.*, at 25).

> So, putting the contractual definitions together, royalties are owed under the License on *all income received* by Scholastic from the sale, licensing, or other use of, *inter alia,* software products derived from the Materials or the Software. "All income" does not mean just some unilaterally determined portion of income allocated to the software, as Defendants contend. Put another way, the income received is what the customer paid for what it purchased. Defendants' interpretation would render the "all income" statement meaningless or rewrite it to include limitations that are not in the contract. But a contract must not be interpreted so as to render a clause superfluous or meaningless. *Galli,* 973 F.2d at 149. These contract provisions and the principles of contract construction make clear that royalties are owed on all income from the sales of each product as a whole—not just the software portion.

(*Id.*, at 28).

On or about May 26, 2021, the district court granted the summary judgment motion in part and denied it in part. The district court held that Vanderbilt had abandoned its claims for declaratory judgment (Count II) and tortious interference with contract (Count VII) and dismissed them, but held that Vanderbilt's claims for breach of contract (Count I) and trademark infringement (Count III) could proceed to trial. (Dkt. No. 101-23, at 34). The district court rejected Scholastic's argument that Vanderbilt's claims were time-barred finding "genuine issues of material fact exist as to when Vanderbilt knew or should have known of the underpayments." (Dkt. No. 101-23, at 20). The district court also rejected Scholastic's argument that the License Agreement did not require payment of the disputed royalties to

11

Vanderbilt. The court held: "For all of these reasons, the Court concludes that the License Agreement unambiguously provides for royalties based on the entire product." (Dkt. No. 101-23, at 26).

 (Dkt. No. 101-10, filed under seal at Dkt. No. 127-10, at 8; Dkt. No. 127-25, at 14, 15-16, 17 (sealed filing)). (Dkt. No. 127-25, at 10 (sealed filing)).

### 4. Scholastic's Notice to Travelers and the Settlement.

Although Scholastic gave notice of the Vanderbilt Action to AIG in early 2018, shortly after the action was filed, it did not provide notice to Travelers until October 30, 2020, more than two-and-half years later. By that time, fact discovery in the Vanderbilt Action was closed. (Dkt. No. 104, at 3, ¶ 10).

On June 21, 2021, Willis, Scholastic's insurance broker, provided notice of the May 26, 2021 Order to Travelers. (Dkt. No. 104, at 4, ¶ 13). Willis also advised Travelers that a mediation of the Vanderbilt Action was scheduled for the following day, June 22, 2021. (*Id.*). On June 23, 2021, Willis advised Travelers that the mediation was scheduled to continue July 1, 2021. (*Id.*, at 4, ¶ 14). On June 29, 2021, Scholastic requested that Travelers agree not to raise lack of consent to settlement as a defense to coverage to allow Scholastic to settle with Vanderbilt. (*Id.*, at 4, ¶ 15). On June 30, 2021, Travelers agreed, while reserving all other rights to limit or deny coverage under the Travelers Umbrella Policy. (Dkt. No. 104, at 4-5, ¶¶ 13-16; Dkt. Nos. 104-5, 104-6, 104-7, 104-8).

On July 1, 2021, Scholastic settled with Vanderbilt, agreeing to pay Vanderbilt ███████. (Dkt. No. 104, at 5, ¶17 (redacted), filed under seal at Dkt. No. 128; Dkt. No. 127-25, at 19 (sealed filing).

On August 25, 2021, AIG paid Scholastic $6,642,139.88. The amount represented the entire remaining balance of the AIG Policy's $10 million policy limit. (Dkt. No. 101-26, at 21-22, 101-02). At the time that AIG paid Scholastic (thereby exhausting the AIG Policy), additional "claim expenses" remained outstanding, including $789,548 in defense fees (for the period January through July 2021) and $80,000 in defense costs (for the period September through December 2020). (Dkt. No. 127-14, at 2-4 (sealed filing). However, Scholastic did

13

not apply any portion of the AIG payment to payment of the "claim expenses." (Dkt. No. 104, at 7-8, ¶ 24 (redacted), filed under seal at Dkt. No. 128 (sealed filing)).

### C.     The Coverage Action.

On or about June 28, 2023, Scholastic filed a Second Amended Complaint against Travelers asserting claims for declaratory judgment and breach of contract. Scholastic alleged that Vanderbilt's breach of contract and trademark infringement claims were covered under the Travelers Umbrella Policy and that Travelers had wrongfully refused to reimburse Scholastic for the outstanding Vanderbilt Action settlement amount and defense costs. (Dkt. No. 28). On or about November 20, 2023, Travelers answered the complaint, denying liability to Scholastic on multiple coverage grounds. (Dkt. No. 41).

### 1.  Travelers' Motion for Judgment on the Pleadings and the Court's Order.

On or about April 30, 2024, Travelers filed a motion for judgment on the pleadings seeking dismissal of the Second Amended Complaint. (Dkt. Nos. 65,66, 67). Travelers argued that neither the AIG Policy nor the Travelers Umbrella Policy provided coverage for Vanderbilt's breach of contract claim against Scholastic based on the unambiguous language of the insurance policies and the applicable law. Travelers argued that Vanderbilt's breach of contract claim was based on Scholastic's failure to pay Vanderbilt the royalties due under the License

14

Agreement and that such a failure to pay was neither a "wrongful act" under the

AIG Policy nor a "professional liability loss" under the Travelers Umbrella Policy.

(Dkt. No. 67, at 8-12). Travelers also argued that the Travelers Umbrella Policy did

not provide coverage for Vanderbilt's trademark infringement claim against

Scholastic. (*Id.*, at 12-16).

In response, Scholastic argued that it had properly alleged that Vanderbilt's

trademark infringement claim was a professional liability loss and that Vanderbilt's

breach of contract claim was covered under both the AIG Policy and the Travelers

Umbrella Policy. (Dkt. Nos. 70, 71). More specifically, Scholastic argued that

Vanderbilt's breach of contract claim was covered because it was "not a simple

failure to pay royalties, … but a dispute over whether Scholastic had the right to

independently develop, publish, and own outright certain intellectual property."

(Dkt. No. 70, at 23).

By Order dated June 21, 2024, the district court denied Travelers' motion.

(Dkt. No. 85).  On July 2, 2024, the district court explained the reasons for the

denial. (Dkt. No. 142-14). The district court first rejected as "myopic" Travelers'

argument that Vanderbilt's trademark infringement claim was not covered because

it involved  advertising and marketing activities, not "professional services."  The

district court held that because "[a]ny trademark infringement is likely to involve

some element of advertising and marketing," Travelers' argument "would

effectively have [the Court] write into [the Travelers Umbrella Policy] a per se exclusion for coverage for trademark infringement liability." (Dkt. No. 142-14, at 5). The district court then turned to Travelers' arguments regarding Vanderbilt's breach of contract claim, which the district court found had "more force," but which it also rejected at the pleadings stage. (*Id.*).

The district court held:

> To be sure, it may be that only a portion of the underlying breach of contract claim was premised on the intellectual property dispute and, thus, that the claim was only partially insurable (assuming it is ultimately found to be insurable at all). But that is a question of fact not appropriate for resolution on a motion for judgment on the pleadings. …. Accordingly, to the extent the breach of contract claim was premised on the alleged infringement, as opposed to the simple failure to pay, payments for the breach of contract claim were at least arguably covered under the Travelers policy.

(Dkt. No. 142-14, at 8-9).

### 2. The Parties' Cross-Motions for Summary Judgment and the Court's Opinion and Order.

On December 13, 2024, Travelers moved for summary judgment in its favor. (Dkt. No. 131 (memo of law); Dkt. No. 132 (Rule 56.1 statement)) (sealed filings). Relying on the License Agreement and the proceedings in the Vanderbilt Action, Travelers argued that Vanderbilt's breach of contract claim was not covered under either the AIG Policy or the Travelers Umbrella Policy because it was based on Scholastic's failure to pay the royalties it had contractually agreed to pay Vanderbilt. As such, it did not constitute either a "wrongful act" (under the AIG

16

Policy) or a "professional liability loss" (under the Travelers Umbrella Policy). (Dkt. No. 131, at 15-20) (sealed filing). Travelers argued that Vanderbilt's trademark infringement claim was not a covered "professional liability loss." (Dkt. No. 131, at 20-22) (sealed filing).

Travelers also argued that if Vanderbilt's claims were covered in part (as the district court's previous ruling on Travelers' motion for judgment on the pleadings suggested could be the case), Scholastic bore the burden to allocate the settlement amount between the covered and non-covered claims and that it had failed to do so. (Dkt. No. 131, at 22-24) (sealed filing). Finally, Travelers argued that the defense costs incurred by Scholastic prior to exhaustion of the AIG Policy were not covered under the Travelers Umbrella Policy. (Dkt. No. 131, at 22-25) (sealed filing).

In response, Scholastic opposed Travelers' summary judgment motion and cross-moved for summary judgment in its favor. (Dkt. Nos. 145, 146, 147) (sealed filings). Regarding coverage for Vanderbilt's breach of contract and trademark infringement claims, Scholastic argued that the district court should enter summary judgment in its favor and against Travelers for the same reasons that the court previously denied Travelers' motion for judgment on the pleadings. (Dkt. No. 145, at 12-16, 19-22) (sealed filings). Regarding allocation of the settlement amount between Vanderbilt's breach of contract and trademark infringement claims,

17

Scholastic argued that no allocation was required because both claims were covered. Alternatively, Scholastic argued that its potential liability for *either* claim justified the settlement amount rendering allocation unnecessary. (Dkt. No. 145, at 31-35) (sealed filings). Finally, Scholastic argued that Travelers was responsible for Scholastic's unpaid defense costs following the exhaustion of the AIG Policy pursuant to the terms of the Travelers Umbrella Policy. (Dkt. No. 145, at 35-38) (sealed filings).

By Opinion and Order dated September 15, 2025, the district court held that "Travelers must pay both the outstanding defense and settlement costs that Scholastic incurred in connection with the Vanderbilt Action but is not liable for any consequential damages." (Dkt. No. 182, at 16-17). Regarding the settlement costs, the court held that Vanderbilt's trademark infringement and breach of contract claims were both covered under the Travelers Umbrella Policy. The district court once again rejected Travelers' argument that Vanderbilt's trademark infringement claim was not covered because it involved advertising and marketing activities, not "professional services." (*Id.*, at 10). The district court also once again rejected Travelers' argument that Vanderbilt's breach of contract claim was not covered because it rested on Scholastic's failure to pay Vanderbilt the royalties it owed under the License Agreement. The district court stated:

> Here, Vanderbilt's breach of contract claim was not premised on Scholastic's mere failure to pay an agreed upon amount; instead, it

18

was premised on a separate act – namely, Scholastic's purported misappropriation of Vanderbilt's intellectual property. In other words, Vanderbilt would have been entitled to relief even if the License Agreement did not exist.

(*Id.*, at 11). In so holding, the district court rejected Travelers' argument that "any damages owed by Scholastic could not be due to 'misappropriation' … because, through the License Agreement, it had an exclusive license to use Vanderbilt's intellectual property" – describing it as "just another version of Travelers' principal argument that Scholastic could not recover for losses caused by a breach of contract as a categorical matter." (Dkt. No. 182, at 12).

Because the district court held that Vanderbilt's trademark infringement and breach of contract claims were both covered under the Travelers Umbrella Policy, it held that it "need not and does not resolve the parties' disputes over how the settlement should be allocated as between the trademark infringement claim and the breach of contract claim." (Dkt. No. 182, at 10, n. 2).

Regarding the defense costs, the district court rejected Travelers' argument that the defense costs were not covered under the Travelers Umbrella Policy because they were incurred prior to the exhaustion of the AIG Policy. Instead, the district court held "when … the AIG Policy was exhausted, Travelers stepped into AIG's shoes and became responsible for any losses covered by the AIG Policy that

19

also fell within the scope of the Travelers Policy, which included the outstanding defense costs." (Dkt. No. 182, at 14).[1]

### D.     The Appeal.

On September 25, 2025, the district court entered the Order and Final Judgment in accordance with the Opinion and Order. (Dkt. No. 184). The Court ordered that "Travelers must reimburse Scholastic for all the outstanding defense costs and settlement amounts Scholastic incurred in connection with the Vanderbilt Action" and entered a money judgment against Travelers in the amount of $19,428,298.04, plus post-judgment interest. (Dkt. No. 184).

Travelers filed its notice of appeal on October 9, 2025. This appeal follows. (Dkt. No.185).

---

[1] The district court also concluded that "Scholastic's request for 'consequential damages' fails as a matter of law," granting Travelers' motion for summary judgment in that regard. (Dkt. No. 182, at 16). Scholastic did not appeal the ruling.

20

## SUMMARY OF ARGUMENT

I. The district court incorrectly held that Vanderbilt's breach of contract claim against Scholastic is covered under the Travelers Umbrella Policy. The Travelers Umbrella Policy provided coverage for an "occurrence" defined as "a rendering of, or failure to render, any professional service by or on behalf of the Insured which results in a Professional Liability Loss." In the Vanderbilt Action, Vanderbilt claimed that Scholastic breached the License Agreement by not paying royalties on multiple products and sought as breach of contract damages the royalties that Scholastic owed under the License Agreement but failed to pay. Scholastic's failure to pay is not "a rendering of, or failure to render, [a] professional service" because it required no specialized knowledge or acumen, nor is it a "wrongful act;" rather, it is the breach of a "preexisting contractual obligation" and, as such, it is not covered.

II. Because the district court held that Vanderbilt's breach of contract and trademark infringement claims are both covered, it found it unnecessary to address the parties' dispute regarding allocation of the settlement amount between the claims. For the reasons set forth, however, the breach of contract claim is not covered. As a consequence, allocation of the settlement amount between the non-covered breach of contract claim and the trademark infringement claim is required as a matter of law. Because the district court did not address the parties' dispute

21

regarding allocation of the settlement amount, this Court should remand the case to the district court so that it may do so in the first instance.

III.    The district court incorrectly held that Travelers was required to pay the balance of the defense costs that Scholastic incurred defending the Vanderbilt Action prior to exhaustion of the AIG Policy. AIG provided a defense to Scholastic pursuant to the underlying AIG Policy and was required to pay the defense costs incurred by Scholastic prior to exhaustion of the AIG Policy, not Travelers. The fact that pre-exhaustion defense costs remained outstanding when the AIG Policy was exhausted to partially fund the settlement amount does not affect the duty to defend under the Travelers Umbrella Policy.

## ARGUMENT

**I.     The District Court Incorrectly Held that Vanderbilt's Breach of Contract Claim was Covered Under the Travelers Umbrella Policy.**

### A.     The Standard of Review.

The standard of review for both motions to dismiss and summary judgment is *de novo*. *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir. 2003). "Summary judgment is appropriate only if the moving party shows there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Id.*

### B.     Scholastic's Failure to Make Contractually-Required Royalty Payments Is Not "the Rendering of, or Failure to Render, A Professional Service" Nor Is It a "Wrongful Act."

The Professional Liability Endorsement to the Travelers Umbrella Policy provided that Travelers would pay damages that Scholastic was legally obligated to pay because of "professional liability loss" caused by an occurrence defined as "a rendering of, or failure to render, any professional service by or on behalf of" Scholastic.

The term "professional service" is not defined by the Travelers Umbrella Policy. Under New York law, "the question of whether one is engaged in a professional service depends on whether those individuals 'acted with the special acumen and training of professionals when they engaged in the acts." *James River Ins. Co. v. Indian Harbor Ins. Co.,* 418 F. Supp.3d 3, 8 (S.D.N.Y. 2019) (citation

23

omitted). To make this determination, "courts should '[look] to the nature of the conduct under scrutiny rather than the title or position of those involved, as well as the underlying complaint.'" *See David Lerner Assocs., Inc. v. Philadelphia Indem. Ins.. Co.,* 934 F.Supp.2d 533, 541 (E.D.N.Y. 2013), *aff'd,* 542 Fed. Appx. 89 (2d Cir. 2013) (citation omitted).

In *David Lerner,* the underlying lawsuits alleged that the insured, an underwriter, "failed to engage in due diligence in connection with the sale of …financial products." 934 F.Supp.2d at 536. The court held that "when an underwriter performs due diligence in connection with the sale of financial products, such activity certainly constitutes 'professional services.'" *Id.*

Similarly, in *Those Certain Underwriters at Lloyd's London v. DVO, Inc.,* 473 F.Supp.3d 236 (W.D.N.Y. 2020), the insured contracted to design and construct an anaerobic digester system. In the underlying lawsuit, the plaintiff alleged that the insured's faulty design of the system caused it to fail resulting in damage. The court held that because the underlying lawsuit "alleges claims arising out of the insured's engineering services, … and because these services require specialized knowledge and engineering acumen, they are 'professional services.'" *Id.* at 257.

In contrast, in *Albert J. Schiff Assoc., Inc. v. Flack,* 51 N.Y.S.2d 692, 417 N.E.2d 84, 435 N.Y.S.2d 972 (N.Y. 1980), the insured, a firm of life insurance agents and employee benefit plan consultants, was sued by a competitor for willful

24

and malicious usurpation of a trade or commercial secret. The Court held that the suit was not covered by the insured's professional indemnity insurance because it did not involve the performance of professional services by the insured. In so holding, the Court specifically distinguished between professional services and other, normal business activities:

> The renting of an office, the engagement of employees, arrangements to expand the size of one's activities, these may all have some connection with a covered business or profession. But, while they may set the stage for the performance of business or professional services, they are not the professional activities contemplated by this special coverage.

*Id.* at 700.

Similarly, in *Napoli Shkolnick, PLLC v. Greenwich Ins. Co.,* 193 A.D.3d 620, 142 N.Y.S.3d 810, 2021 N.Y. Slip Op. 02499 (2021), the underlying lawsuit asserted claims by one law firm against another for, *inter alia*, breach of contract, unjust enrichment, a constructive trust and negligence, seeking to recover contingency fees withheld in violation of fee-sharing joint representation agreements between the law firms. The court held that the defendant law firm's professional liability insurance policies did not apply because the underlying suit "was premised on actions taken by [the insured] as a business, not in its professional capacity as a law firm." *Id.* at 621.

Here, as in *Schiff* and *Napoli Shkolnick*, Vanderbilt's breach of contract claim against Scholastic was premised on actions taken by Scholastic as a business.

25

In the Vanderbilt Action, Vanderbilt claimed that Scholastic breached the License Agreement by not paying royalties on multiple products and sought as breach of contract damages the royalties that Scholastic owed under the License Agreement but failed to pay. In sum, Vanderbilt sued Scholastic for breach of contract, not because it failed to render the professional services it was hired to perform (like the engineer in *DVO*), but because it failed to pay Vanderbilt the royalties it had agreed to pay (like the law firm in *Napoli Shkolnick*). When a business fails to pay what it owes under a contract, that is a business failure, not a failure to render a professional service. And because Scholastic's failure to pay was "the nature of the conduct" at issue in Vanderbilt's breach of contract claim, there is no coverage for the claim under the Travelers Umbrella Policy.

To be clear, Traveler is <u>not</u> arguing that the reason Vanderbilt's breach of contract claim is not covered is because it is styled as a claim for "breach of contract," as the district court suggested. (Dkt. No. 182, at 11). Rather, Vanderbilt's breach of contract claim is not covered because it is premised on Scholastic's failure to pay the royalties it contractually agreed to pay when it entered into the License Agreement.

In *Women's Integrated Network, Inc. v. U.S. Specialty Ins. Co.,* 2012 WL 13070116 (S.D.N.Y. Oct. 26, 2012), the plaintiff's claimed relief against the insured flowed from its "contractual obligations to him under his Management

26

Equity Plan and Stock Option Agreement." *Id.* at *7. Because the damages at issue were "equivalent to the benefit [the plaintiff] would have received under his contract" with the insured, the court held that the WIN's D&O policy did not provide coverage for the claim. *Id.* at *8. In reaching its decision, the court cited cases holding that "loss does not include expenditures or damages required by a voluntarily undertaken contractual obligation as the loss is not legally obligated, but contractually obligated" and that "insuring contractual damages would create a moral hazard problem, encouraging corporations to risk a breach of their contractual obligations, knowing that, in the event of a breach, the … insurer would ultimately be responsible for paying the debt." *Id.* at *23-*24 (quotations and citations omitted).

Similarly, in *Evanston Ins. Co. v. Napoli Bern Ripka & Assoc., LLP,* 2019 WL 10966201 (S.D.N.Y. Jun. 28, 2019), the plaintiff's claimed relief "arose out of a pre-existing contract allocating referral fees and obligating [the insured] to account to [the plaintiff] for those fees." *Id.* at *5. Because the damages at issue "constitute[d] preexisting contractual obligations," the court held that there was no coverage for the claim under NBRA's Profit Management Liability policy. *Id.*

In contrast, in *Touchette Corp v. Merchants Mut. Ins. Co.*, 76 A.D.2d 7, 49 N.Y.S. 952 (4th Dep't 1980), cited by the district court (Dkt. No. 182, at 11), the plaintiff sued the insured for "damages arising from the contract, contending that

27

[the insured] failed to maintain an accurate list of subscribers …, failed to design and implement a satisfactory system …, failed to balance the accounts …, and failed to design and implement various other data processing systems." *Id.* at 8. Because the policy provided coverage for "any claim against the Insured caused by any negligent act, error, or omission of the Insured arising out of the performance of data processing services," the court held that there was a duty to defend under the policy. The court stated: "If the proof establishes that the breach was occasioned by a negligent failure to perform, the errors and omission policy unquestionably provides coverage." *Id.* at 10.

Similarly, in *Wentworth Group Inc. v. Evanston Ins. Co.,* 2021 WL 2828838 (S.D.N.Y. Jul. 8, 2021), cited by the district court, (Dkt. No. 182, at 11), the plaintiff in the underlying suit, a condominium board, sued the insured, the condominium's property manager, for fraud, breach of fiduciary duty, constructive fraud, aiding and abetting, civil conspiracy and breach of contract, alleging that the property manager "concealed construction and design defects, and failed to properly bill tenants, pay contractors, order supplies and advise the Board about maintenance." Because the policy provided coverage for "damages … by reason of … a Wrongful Act … in the performance of Real Estate Services or Property Management Services," the court held that there was a duty to defend under the policy. The court stated: "courts have determined that a breach of contract can be

28

occasioned by a negligent failure to perform, and that actions alleging as much fall within the coverage of an error and omissions insurance policy." *Id.* at *8.

Here, as in *WIN* and *NBRA*, Vanderbilt's breach of contract claim against Scholastic sought as damages the royalties that Scholastic had previously agreed to pay Vanderbilt under the License Agreement. There is no coverage for the claim – not because it is styled as a claim for breach of contract, but because the damages at issue are what the insured had previously agreed, and was already contractually obligated, to pay. *Touchette* and *Wentworth,* cited by the district court, are not to the contrary. In both of those cases, the breach of contract alleged was the contracting party's negligent performance of its contractual obligations, not – as in *WIN, NBRA* and here – a failure to pay the amount due.

Nor can there be any dispute that the gravamen of Vanderbilt's breach of contract claim against Scholastic was Scholastic's 20-year failure to pay Vanderbilt the millions of dollars in royalties it owed Vanderbilt under the License Agreement, but pocketed instead. In its complaint, Vanderbilt alleged that Scholastic and HMH paid Vanderbilt "only … a fraction of the royalties to which it [was] entitled under the License." (Dkt. No. 28-4, at 1). Vanderbilt further alleged that an audit had revealed that Scholastic and HMH "failed to pay Vanderbilt royalties for products that Scholastic and HMH had already agreed were royalty-bearing," "failed to remit royalty payments to Vanderbilt for sales of products based on or derived from

29

the licensed Materials," "failed to pay Vanderbilt for any royalties generated by Canadian sales of Read 180," "failed to pay royalties for the complete Read 180 Literacy Program as required by the License," and "made improper deductions from Vanderbilt's royalty payments for supposed shipping and handling costs associated with Read 180 products." (Dkt. No. 28-4, at 14-15). Specifically with respect to its breach of contract claim, Vanderbilt alleged that Scholastic and HMH "failed to remit and/or underpaid contracted-for royalties for Read 180 and its Derivative Products pursuant to the License, and improperly deducted and carved-out from such royalty amounts due to Vanderbilt," and "caused damages to Vanderbilt in the form of under-calculated and underpaid royalties." (Dkt. No. 28-4, at 37-38).

Nor was Vanderbilt's focus lost on Scholastic. In its unsuccessful summary judgment motion, Scholastic described parties' dispute this way: "Although Vanderbilt has asserted a variety of tort and contract claims, the core of this dispute is Vanderbilt's contention that it has been underpaid royalties for more than twenty years under a license agreement dated January 1, 1997 with Scholastic that was assigned to HMH in 2015." (Dkt. No. 101-19, at 11).)

Vanderbilt concurred with Scholastic's description of the dispute. In its successful opposition to Scholastic's summary judgment motion, Vanderbilt stated: "Vanderbilt claims … that Scholastic [and HMH] underpaid Vanderbilt for the

30

royalties owed on sales of Read 180. Vanderbilt also contends that [Scholastic and HMH] breached the agreement by developing other products based on or derived from the licensed Materials, specifically System 44, FASTT Math, Math 180, and iRead, without telling Vanderbilt or paying royalties on the sale of those products." (Dkt. No. 101-22, at 5) (redacted).

Contrary to the district court's Opinion and Order, Vanderbilt's breach of contract claim was not "premised on a separate act – namely, Scholastic's purported misappropriation of Vanderbilt's intellectual property." (Dkt. No. 182, at 11-12). Vanderbilt agreed to allow Scholastic to make use of its intellectual property in accordance with the terms of the License Agreement in exchange for the payment of royalties. Vanderbilt's breach of contract claim was not that Scholastic misappropriated its intellectual property; it was that Scholastic failed to pay Vanderbilt the agreed-upon price for it.

Under these circumstances, "courts have held that a claim alleging breach of contract is not covered under a professional liability policy because there is no 'wrongful act' and no 'loss' since the insured is simply being required to pay an amount it agreed to pay." 23 Appleman on Insurance 2d (Holmes ed. 2003), § 146.6[I]. *See, e.g., Pacific Ins. Co., Ltd. v. Eaton Vance Mgmt.*, 369 F.3d 584, 592 (1st Cir. 2004) (holding that policy that provided coverage for "loss or liability incurred … by reason of .. any actual or alleged breach of fiduciary responsibility"

31

did not provide coverage for a judgment for back payment of benefits because such a judgment would necessarily be derivative of a finding that the Plan documents themselves created the financial obligation to pay); *Waste Corp. of Am., Inc. v. Genesis Ins. Co.*, 382 F. Supp. 2d 1349, 1355 (S.D. Fla. 2005), *aff'd*, 209 F. App'x 899 (11th Cir. 2006) (holding that D&O policy that provided coverage for "wrongful acts" did not provide coverage for damages for breach of contract); *Health Net, Inc. v. RLI Ins. Co.*, 206 Cal. App. 4th 232, 253 (2012) (holding that professional liability policy that provided coverage for "wrongful acts" did not provide coverage for unpaid health benefits because there was "no wrongful act and no loss since the insured [was] simply being required to pay an amount it agreed to pay"); *American Cas. Co. of Reading, Pa. v. Hotel & Restaurant Employees & Bartenders Union Welfare Fund,* 113 Nev. 764, 942 P.2d 172 (Nev. 1997) (holding that policy that provided coverage for "wrongful acts" did not provide coverage for a judgment against the insureds for their failure to pay what was owed under a contract, stating: "The refusal to pay an obligation simply is not the cause of the obligation, and the international trustees' wrongful act in this case did not result in their obligation to pay; their contract imposed on them the obligation to pay.");

As the court explained in *Waste Corp.*,

Deciding whether to read breach of contract coverage into the insuring agreement should be determined against the backdrop of the strong

32

public policy against insuring such breaches. There is good reason for the general prohibition. Allowing an insured to control whether it will be covered for its act of breaching a contract places the insured in the unique posture of voluntarily choosing to do some act for which he knows an insurance company will compensate him even if he chooses wrongly. Who wouldn't buy insurance if he could decide whether to perform or decline to perform some act which would give him coverage for that action? Such a premise eliminates all risk to a potential insured. He could enter into a contract safe in the assumption that if he later decides to engage in an act which might be considered a breach, the insurance company will step forward to cover the consequences of his act if he was wrong; and if he was right, he still walks away with no consequence to himself. Such a practice is inimical to the entire concept of insurance.

*Waste Corp.*, 382 F. Supp. 2d at 1354-55.

## C. Scholastic is Not Entitled to a Windfall.

As claimed by Vanderbilt, Scholastic (and later, its assignee, HMH) kept money that Scholastic had previously agreed to pay Vanderbilt as royalties under the License Agreement. Then, after the district court in the Vanderbilt Action determined that Vanderbilt's interpretation of the License Agreement was correct and that Vanderbilt was entitled to proceed to trial against Scholastic, Scholastic settled with Vanderbilt – finally paying Vanderbilt royalties it had contractually agreed to pay twenty years earlier. Requiring Travelers to pay Scholastic now – when all Scholastic has done is pay what it originally agreed to pay – would be contrary to the AIG Policy (which excludes claims alleging or arising out of the "gaining of any profit or advantage to which you are not legally entitled"), the Travelers Umbrella Policy and public policy and the Court should not do it.

33

**II.** **The District Court Incorrectly Failed to Allocate the Settlement Amount Between the Uncovered Breach of Contract Claim and the Trademark Infringement Claim, Necessitating Remand.**

Because the district court held that Vanderbilt's breach of contract and trademark infringement claims were both covered, the district court found it unnecessary to allocate the settlement amount between the two claims. For the reasons set forth above, however, the breach of contract claim is not covered. As a consequence, allocation of the settlement amount between the non-covered breach of contract claim and the trademark infringement claim is required as a matter of law. Because the district court did not address the parties' dispute regarding allocation of the settlement amount, this Court should remand the case to the district court so that it may do so in the first instance.

In order to recover the amount of a settlement from an insurer, an insured need not establish actual liability to the party with whom it settled "so long as … a potential liability on the facts known to the [insured] is shown to exist, culminating in a settlement in an amount reasonable in view of the size of the possible recovery and degree of probability of claimant's success against the [insured]." *Luria Bros. & Co. v. Alliance Assur. Co., Ltd.,* 780 F.2d 1082, 1091 (2d Cir. 1986). However, "there can be no duty to indemnify [on the part of the insurer] unless there is first a covered loss." *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford,* 64 N.Y.2d 419, 423, 477 N.E.2d 441, 488 N.Y.S.2d 139 (N.Y. 1985). In contrast to the duty to

34

defend, "[t]he duty to indemnify requires a *covered* loss not merely the 'possibility' of coverage." *Burroughs Wellcome Co. v. Commercial Union Ins. Co.,* 713 F. Supp.694, 699 (S.D.N.Y. 1989). For this reason, "[t]he award of settlement costs is inappropriate, unless and until it is determined that the particular case settled was a covered risk." *Id.* Moreover, "it is the insured's burden to establish the existence of coverage." *Platek v. Town of Hamburg,* 24 N.Y.3d 688, 26 N.E.3d 1167, 3 N.Y.S.3d 312 (N.Y. 2015).

Here, Scholastic settled with Vanderbilt. It is, therefore, Scholastic's burden to show that the settlement amounts it seeks to recover from Travelers are *actually* covered under the Travelers Umbrella Policy. At the time of the settlement, two claims remained pending against Scholastic, both of which were settled: the breach of contract claim and the trademark infringement claim. Assuming *arguendo* that the trademark infringement claim is covered and the breach of contract claim is not, an allocation of the settlement amount between the claims is required. *See Clifford Chance Ltd. Liability P'ship v. Indian Harbor Ins. Co.,* 14 Misc. 3d 1209(A), 836 N.Y.S.2d 484 (N.Y. 2006) (Table) ("Insurers are entitled to allocate loss, or settlement costs, between covered and non-covered claims, or parties, where there is a factual basis to do so.") (collecting cases). And "the insured generally has the burden of identifying covered damages." *Uvino v. Harleysville Worcester Ins. Co.,* 2015 WL 925940, *7 (S.D.N.Y. Mar. 4, 2015) (holding that

35

insured has burden of proving what portion of general verdict is attributable to covered claims and what portion is attributable to noncovered claims).

The parties litigated and briefed the allocation issue extensively in the district court. Travelers offered substantial evidence that the damages risk presented by the trademark infringement claim was minimal in comparison to the breach of contract claim,

However, because the district court held that it was unnecessary to "resolve the parties' disputes over how the settlement should be allocated," (Dkt. No. 182, at 10, n. 2), the district court never addressed the issue. Accordingly, if this Court determines – and it should – that Vanderbilt's breach of contract claim is not covered, it should remand this case to the district court to allow the court to "resolve the parties' disputes over how the settlement should be allocated" in the first instance.

## III. The District Court Incorrectly Held that Travelers Was Required to Pay the Remaining Balance of Scholastic's Defense Costs

The district court rejected Travelers' argument that it had no obligation to pay the defense costs incurred by Scholastic in connection with the Vanderbilt

36

Action before the AIG Policy was exhausted by payment on August 25, 2021. At that time, additional "claim expenses" remained outstanding, including $789,548 in defense fees (for the period January through July 2021) and $80,000 in defense costs (for the period September through December 2020). (Dkt. No. 127-14) (sealed filing). This, too, is error.

Travelers had no obligation to pay the outstanding defense costs for the Vanderbilt Action because it had no duty to defend Scholastic under the Travelers Umbrella Policy until after the underlying AIG Policy was "exhausted by payment of judgments or settlements that would be covered by [the Travelers Umbrella Policy]." (Dkt. No. 112, at 21, ¶100; Dkt. No. 101-26, at 11). *See Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp. 3d 818, 848 (S.D.N.Y. 2018) (holding "[c]overage under an excess policy … is triggered only after the liability limits of the underlying primary insurance policy have been exhausted") (citation omitted). As set forth above, because the breach of contract claim is not covered and the settlement amounts have yet to be allocated between the trademark infringement claim and the non-covered breach of contract claim, it remains unknown whether the AIG Policy was exhausted by the payment of "settlements that would be covered by [the Travelers Umbrella Policy]" to trigger Travelers' duty to defend.

Even assuming the AIG Policy was exhausted by payment of a covered claim under the Travelers Umbrella Policy, it was not until August 25, 2021. (Dkt.

37

No. 112, at 25, ¶119). Yet, Scholastic seeks reimbursement from Travelers of defense costs incurred in connection with the Vanderbilt Action *before* August 25, 2021, when -- it is undisputed – the duty to defend Scholastic rested with AIG, *not* Travelers. Such pre-exhaustion defense costs are not covered under the Travelers Umbrella Policy. (Dkt. No. 112, at 21, ¶100); *Olin*, 332 F. Supp. 3d at 848.

In rejecting Travelers' argument, the district court reasoned that "AIG could have allocated its payment in the first instance to Scholastic's defense costs and then to settlement – and the balance of the unpaid costs would be the same." (Dkt. No. 182, at 14). But the court's reasoning ignores an important difference between the AIG Policy and the Travelers Umbrella Policy: the AIG Policy limit included the payment of "claim expenses"; in contrast, the Travelers Umbrella Policy provides that any expenses Travelers incurs in defense of a "Claim or Suit are *in addition* to the limits of insurance under [the] policy." By shifting the payment of defense costs incurred prior to the exhaustion of the AIG Policy to Travelers, Scholastic's insurance coverage is effectively increased -- which the court may not do.

## CONCLUSION

For the foregoing reasons, the Court should (i) reverse the district court's holding that the breach of contract claim against Scholastic in the Vanderbilt Action is covered under the AIG Policy and the Travelers Umbrella Policy, (ii)

38

reverse the district court's holding that the defense costs incurred by Scholastic in connection with Vanderbilt Action before August 25, 2021 are covered under the Travelers Umbrella Policy, and (iii) remand this case with directions that the district court address the allocation issue.

Respectfully submitted,

**BESVINICK NEVINS LLP**
1115 Anastasia Avenue
Coral Gables, Florida 33134
Tel: (786) 780-1101

/s/ *Laura Besvinick*
**Laura Besvinick**
laura.besvinick@bn-llp.com
service@bn-llp.com

**RIVKIN RADLER LLP**
926 RXR Plaza
Uniondale, NY 11556-0926
Tel: (516) 357-3000

/s/ *Joanne M. Engeldrum*
Joanne M. Engeldrum, Esq.
joanne.engeldrum@rivkin.com

*Counsel for Defendant-Appellant St. Paul Fire and Marine Insurance Company*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32.1(a)(4)(A) because, as calculated by Microsoft Word, it contains 8790 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). I also certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Times New Roman font.

Respectfully submitted,

**BESVINICK NEVINS LLP**
1115 Anastasia Avenue
Coral Gables, Florida 33134
Tel: (786) 780-1101

/s/ *Laura Besvinick*
    **Laura Besvinick**
    laura.besvinick@bn-llp.com
    service@bn-llp.com

40

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

Respectfully submitted,

**BESVINICK NEVINS LLP**
1115 Anastasia Avenue
Coral Gables, Florida 33134
Tel: (786) 780-1101

/s/ *Laura Besvinick*
    **Laura Besvinick**
    laura.besvinick@bn-llp.com
    service@bn-llp.com

**ADDENDUM**

A.      Order Denying Motion for Judgment on the Pleadings
(Dkt. No. 85).

B.      Transcript dated July 2, 2024 (Dkt.142-14).

C.      Opinion and Order (Dkt. No. 182).

D.      Order and Final Judgment (Dkt. No. 184).

# ADDENDUM A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:
SCHOLASTIC, INC.,                                                  :
:
Plaintiff,            :
:                          23-CV-3485 (JMF)
:
-v-                                :
:                          ORDER
ST. PAUL FIRE & MARINE INSURANCE COMPANY, :
:
Defendant.            :
:
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      For reasons the Court will explain orally at the pretrial conference referenced below, Defendant's motion for judgment on the pleadings is DENIED.  In brief, and as the Court will explain more fully at the conference, Defendant's arguments mischaracterize the nature of the trademark infringement and breach of contract claims in the underlying action, effectively asking the Court to write additional exclusions into Defendant's policy.  Although Defendant's arguments with respect to the underlying breach of contract claim are not without force (and indeed may ultimately result in a denial of coverage for costs incurred in connection with that claim), they turn on questions of fact that cannot be resolved at this stage.

      The pretrial conference scheduled for July 10, 2024, is hereby RESCHEDULED for **July 2, 2024**, at **3:00 p.m.**  To access the conference, counsel should call 888-363-4749 and use access code 5421540#.  Members of the press and public may call the same number, but will not be permitted to speak during the conference.  The parties are reminded to follow the procedures for telephone conferences described in the Court's Individual Rules and Practices, which are available at https://nysd.uscourts.gov/hon-jesse-m-furman, including Rule 3(B)(i), which requires the parties, **no later than 24 hours before the conference**, to send a joint email to the Court with the names and honorifics (e.g., Mr., Ms., Dr., etc.) of counsel who may speak during the teleconference and the telephone numbers from which counsel expect to join the call.

      The Clerk of Court is directed to terminate ECF No. 65.

      SO ORDERED.

Dated: June 21, 2024
     New York, New York
                            JESSE M. FURMAN
                            United States District Judge

# ADDENDUM B

O72DSchC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SCHOLASTIC, INC.,

                Plaintiff,

        v.                              23 CV 03485

ST. PAUL FIRE & MARINE
INSURANCE COMPANY,

                Defendant.
                                        Conference
------------------------------x
                                        New York, N.Y.
                                        July 2, 2024
                                        3:00 p.m.

Before:

                    HON. JESSE M. FURMAN,

                                        District Judge

                        APPEARANCES

ANDERSON KILL, P.C.
     Attorneys for Plaintiff
BY:  CORT MALONE
     THOMAS DUPONT

RIVKIN RADLER, LLP
     Attorneys for Defendant
BY:  JOANNE ENGELDRUM
     MICHAEL CANNATA

O72DSchC

(Case called)

THE COURT:  Good afternoon.

Can I confirm, Amy, are you on the line?

COURT REPORTER:  Yes, your Honor.

THE COURT:  Great.  Thank you.

Before I take appearances, I would ask that you mute your phones to avoid background noise, and remember, however, to unmute it when you wish to say something.  Please begin with your name so the court reporter and I know who's doing the speaking.

Number three, remember this is a public conference, just as it would be if we were in open court.

Finally, a reminder that it cannot be recorded or rebroadcast by anyone.

With that, I will take appearances, and if one counsel for each side can enter appearances for anyone on, that would be great.

Beginning with counsel for plaintiff.

MR. MALONE:  Good afternoon, your Honor.

Cort Malone and Thomas Dupont from Anderson Kill on behalf of plaintiff, Scholastic, Inc.

THE COURT:  Good afternoon.

Counsel for defendant?

MS. ENGELDRUM:  Good afternoon, your Honor.

This is Joanne Engeldrum, and I have Michael Cannata

from Rivkin Radler on behalf of St. Paul Fire & Marine Insurance Company.

THE COURT:  Good afternoon to you as well.

All right.  Let me start by explaining my bottom line order entered on June 21 that denied the defendant's motion for judgment on the pleadings for reasons that I would explain today.  I will now give you those reasons.

In its motion, Defendant argues that Plaintiff's Complaint should be dismissed because the breach of contract claim is not covered under either the primary AIG policy or the Travelers policy and the trademark infringement claim is not a covered "Professional Liability Loss" under the Travelers policy.  See ECF No. 67 ("Defendant's Memorandum"), at 8-16.

Starting with the latter, the thrust of Defendant's argument is that Vanderbilt's infringement claim was premised on Scholastic's "fail[ure] to obtain Vanderbilt's permission before using Vanderbilt's Trademarks in its advertising and marketing materials for the Derivative Products and Ancillary Products 'in order to enrich [itself]'" and that advertising and marketing products is not "a 'professional service' [that] requires the use of the special acumen and training of a professional in performing a service for another."  Defendant's Memorandum at 14-15.  But this argument mischaracterizes Vanderbilt's allegations in the underlying action.  Count III of Vanderbilt's complaint describes the allegedly infringing

conduct as the "unauthorized advertisement, promotion, display, offering for sale, sale, and distribution of Scholastic's goods and services bearing Vanderbilt's Marks."  ECF No. 66-5 ("Vanderbilt Complaint"), paragraph 89.  Thus, the allegations do not rest exclusively on Scholastic's advertising and marketing activities; instead, they are directed at a core "professional service" undertaken by Scholastic, including developing, publishing, and, of course, selling educational products.  Defendant's attempt to focus myopically on the "advertising and marketing" aspect of the allegedly infringing activity is unpersuasive.  Any trademark infringement is likely to involve some element of advertising and marketing given that the very purpose of using a recognizable mark is to attract consumers; Defendant's argument would effectively have me write into its policy a per se exclusion of coverage for trademark infringement liability.  I cannot and will not do so.

Defendant's arguments with respect to the underlying breach of contract claim have more force, but they too ultimately mischaracterize the nature of Vanderbilt's allegations in an effort to read additional exclusions into the Travelers' policy.  Defendant's argument on this front is twofold: first, that breach of contract is not a "wrongful act" covered by the AIG policy (and thus is necessarily not covered by the Travelers' policy given the "no broader coverage" clause in the latter); and second, that, on both contractual and

O72DSchC

public policy grounds, breach of contract cannot be cured under professional liability insurance policies.  See Defendant's Memorandum at 8-12.

But the law does not support the categorical rule pressed by Defendant.  In *Evanston Insurance Company v. Napoli Bern Ripka & Associates LLP*, 2019 WL 10966201 (S.D.N.Y. June 28, 2019), and *Women's Integrated Network, Inc. v. U.S. Specialty Insurance Company*, 2012 WL 13070116 (S.D.N.Y. October 26, 2012), the cases on which Defendant relies most heavily, the contractual damages at issue were deemed to fall outside the scope of the respective policies because of the nature of the underlying claims.  See *Evanston*, 2019 WL 10966201, at *5 ("These payments constitute preexisting contractual obligations that do not fall within the scope of the policy or any of the enumerated acts constituting a wrongful employment practice, and damages resulting from breach of contract claims are in fact expressly precluded from it."); *Women's Integrated Network, Inc.*, 2012 WL 13070116, at *8 ("WIN does not point to any legal authority or any language in the Policy that affirmatively grants coverage to this type of contractual damages.").  But a claim may be insurable, even if pleaded as a breach of contract, if the alleged breach is "occasioned by" conduct that falls within the scope of the relevant policy. *Wentworth Group Inc. v. Evanston Insurance Company*, 2021 WL 2828838, at *8 (S.D.N.Y. July 8, 2021).  Put differently: "It

O72DSchC

is not the form of the pleading which determines coverage . . . , it is the nature of the insured's conduct . . . ." *Touchette Corporation v. Merchants Mutual Insurance Company*, 429 N.Y.S.2d 952, 954 (4th Department 1980).

Plaintiff argues that "the crux of the Vanderbilt Breach of Contract claim was the alleged misappropriation of Vanderbilt's intellectual property" – essentially, that because of that alleged misappropriation, the at-issue educational products were royalty-bearing under the License Agreement and thus Scholastic owed Vanderbilt under the Agreement.  See ECF No. 70 ("Plaintiff's Opposition"), at 19.  Defendant, in its Reply, counters that because the court in the underlying action granted summary judgment for Scholastic on Vanderbilt's declaratory judgment claim for misappropriation of intellectual property, the breach of contract claim that remained live consisted solely of "Scholastic's alleged failure to pay royalties it was contractually obligated to pay under the License Agreement."  See ECF No. 75 ("Defendant's Reply"), at 3-4.  I need not decide whether that argument was properly raised in Defendant's Reply (and, accordingly, whether I can and should consider Plaintiff's sur-reply) because I find Defendant's attempt to depict the breach of contract claim as wholly distinct from, and unrelated to, the intellectual property claim unpersuasive on its face.  Only those products and materials bearing Vanderbilt's marks were royalty-bearing,

and the merits of a breach of contract claim seeking royalties allegedly due thus plainly depends on a determination of whether the at-issue materials in fact used Vanderbilt's intellectual property.  As Plaintiff correctly argues in its opposition, it "properly alleged in its Complaint that the crux of the Vanderbilt Breach of Contract claim was the alleged misappropriation of Vanderbilt's intellectual property."  See Plaintiff's Opposition at 19 (citing ECF No. 28 ("Second Amended Complaint"), paragraphs 27, 30).

To be sure, it may be that only a portion of the underlying breach of contract claim was premised on the intellectual property dispute and, thus, that the claim was only partially insurable (assuming it is ultimately found to be insurable at all).  But that is a question of fact not appropriate for resolution on a motion for judgment on the pleadings.  See *Touchette*, 429 N.Y.S.2d at 954 ("There may be other causes for the failure to perform for which coverage would not be available but that determination will have to await the trial of the action . . . .  It cannot be decided solely upon a finding that Touchette's duty arises from contract rather than from general tort principles.").  The AIG policy covered "claims arising from" Plaintiff's "wrongful act," and the infringement claims are plainly encompassed in the definition of "wrongful act."  And, as I noted earlier, the infringement claims are encompassed in the definition of

O72DSchC

"Professional Liability Loss" for purposes of the Travelers policy.  Accordingly, to the extent the breach of contract claim was premised on the alleged infringement, as opposed to simple failure to pay, payments for the breach of contract claim were at least arguably insurable under the Travelers policy.  That, viewed in light of the requirement that a Court deciding a Rule 12(c) motion must "draw all reasonable inferences in [the non-movant's] favor," meant that Plaintiff's claims could not be dismissed as a matter of law at this stage of litigation.  See *Lively v. WAFRA Investment Advisory Group, Inc.*, 6 F.4th 293, 301 (2d Cir. 2021).

That concludes the explanation of my reasons for the ruling in my June 21st order.

Now, I normally wouldn't bother having a court reporter be on the record for a post-fact discovery conference of this sort.  I'm happy to stay on the record even though I've now completed the explanation of my ruling.  I'm also happy to let the court reporter go if no one feels the need to remain on the record.

Can I ask plaintiff's counsel, Mr. Malone?

MR. MALONE:  Yes.  No further need for the court reporter to deal with the logistics portion, your Honor.  Thank you.

THE COURT:  Ms. Engeldrum?

MS. ENGELDRUM:  Thank you, your Honor.  We agree

O72DSchC

there's no further needs for the court reporter.

THE COURT:  Great.  So I will let Amy go with my thanks, and we will go off the record.

(Adjourned)

# ADDENDUM C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
SCHOLASTIC INC.,                                                       :
                                                                       :
                                       Plaintiff,                      :
                                                                       :                    23-CV-3485 (JMF)
                -v-                                                     :
                                                                       :                    OPINION AND ORDER
ST. PAUL FIRE AND MARINE INSURANCE                                     :
COMPANY,                                                               :
                                                                       :
                                       Defendant.                      :
                                                                       :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        In this case, Plaintiffs Scholastic Inc. ("Scholastic") seeks a declaration that Defendant

St. Paul Fire and Marine Insurance Company ("Travelers") is obliged to cover costs it incurred in

connection with litigation brought by Vanderbilt University ("Vanderbilt").  Scholastic and

Vanderbilt settled that litigation following summary judgment, when two claims remained, one

for breach of contract and one for trademark infringement.  Scholastic sought, and obtained,

coverage for a portion of its defense costs and a portion of the settlement costs from its primary

insurer.  Because those costs exceeded the policy limits under the primary insurance policy,

Scholastic turned to Travelers, which provided excess insurance to reimburse the balance.

Travelers declined and this lawsuit followed.  Now pending are cross-motions, pursuant to Rule

56 of the Federal Rules of Civil Procedure, for summary judgment.  *See* ECF Nos. 99, 140.  Also

pending are dueling motions to exclude expert opinions and testimony under *Daubert v. Merrell*

*Dow Pharmaceuticals*, 509 U.S. 579 (1993), and Rule 702 of the Federal Rules of Evidence.  *See*

ECF Nos. 105, 113.  For the reasons that follow, the Court concludes that Scholastic is entitled to

coverage of both its defense costs and its settlement costs but is not entitled to consequential

damages. Accordingly, each summary judgment motion is GRANTED in part and DENIED in part. In light of those rulings, the Court need not and does not resolve the parties' motions to exclude, which are therefore DENIED as moot.

## BACKGROUND

The relevant facts — taken from the admissible materials submitted by the parties in connection with their motions — are either undisputed or described in the light most favorable to Travelers. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

### A. The License Agreement and the Vanderbilt Action

In 1997, Vanderbilt licensed computer software that it had designed to promote middle school literacy to Scholastic pursuant to a written agreement (the "License Agreement"). *See* ECF No. 112 ("Def.'s SOMF"), ¶¶ 1-5; *see also* ECF No. 142-3 ("License Agreement"). In exchange for royalties, Vanderbilt granted Scholastic an exclusive license to modify the software and develop, produce, manufacture, replicate, market, sell, package and otherwise distribute "world-wide without restriction" the software as modified and other products based on or derived from the software. Def.'s SOMF ¶¶ 5-9. The License Agreement also permitted Scholastic to use Vanderbilt's marks "subject to Vanderbilt's approval, not to be unreasonably withheld." *Id.* ¶ 13. In 2018, following an audit, Vanderbilt sued Scholastic and other defendants in United States District Court for the Middle District of Tennessee alleging that Scholastic had improperly used its intellectual property to develop a product called Read 180 and other products derived from Read 180 — System 44, FASTT Math, MATH 180, iRead, and Expert 21, and Score It (collectively, the "Other Products") — without paying royalties under the License Agreement. *See* ECF No. 142-4 ("Vanderbilt Complaint"), at 21-34.

2

Following a motion to dismiss, Vanderbilt pressed four claims against Scholastic: Breach of Contract in Violation of New York Law (Count I); Declaratory Judgment of Ownership Interest in the Ancillary Products (Count II); Infringement of Federally Registered Trademarks (Count III); and Tortious Interference with Contract in Violation of Tennessee Law (Count IV). Def.'s SOMF ¶ 36. At the conclusion of discovery, Scholastic moved for summary judgment on all of Vanderbilt's claims. *See* Def.'s SOMF ¶ 47. On May 26, 2021, the Tennessee court granted Scholastic's motion for summary judgment in part and dismissed all but two of Vanderbilt's claims against Scholastic: the trademark infringement claim and the breach of contract claim. *See id.* ¶¶ 56-62. With respect to the trademark infringement claim, the court found that there was evidence of confusion between Vanderbilt's trademarks and marks used by Scholastic in connection with its education materials. *See* ECF No. 127-23 ("Vanderbilt MSJ Op."), at 28-29. With respect to the breach of contract claim, the district court concluded that Scholastic owed royalties for its Read 180 product in an amount to be determined at trial. Vanderbilt MSJ Op. 25 & n.9. Two months after the district court's summary judgment opinion, Vanderbilt and Scholastic reached a settlement. *See* ECF No. 148, ¶ 84.

**B. Scholastic's Insurance Coverage**

At the time of these events, Scholastic was insured under two professional liability insurance contracts — one with its primary liability insurer, Illinois National Insurance Company ("AIG"), and the other with its excess insurer, Travelers. The AIG policy (the "AIG Policy") covered Scholastic for amounts it was legally obligated to pay "to compensate others for damages as a result of" an enumerated "wrongful act" that took place in the performance of Scholastic's multimedia services. Def.'s SOMF ¶¶ 87-88. "Wrongful act" is defined, in turn, to include Scholastic's "infringement of . . . trademark" and "misappropriation of property rights,

3

ideas, or information." *See id.* ¶ 90. And the covered multimedia services include both publishing and advertising. *See* ECF No. 28-1 ("AIG Policy"), at 16-17. Significantly, the AIG Policy included a monetary limit that was eroded by payment of judgments, settlements, and defense costs. *Id.* ¶ 87. The AIG Policy also provided a "duty to defend a covered claim brought against [Scholastic]" that would "end[] after the applicable Limit of Liability has been exhausted." *Id.* ¶ 89.

The Travelers policy (the "Travelers Policy") provided umbrella coverage above the primary AIG Policy. Subject to its terms, conditions and exclusions, the Travelers Policy provided professional liability coverage for sums in excess of the AIG Policy limit that Scholastic became legally obligated to pay as damages by reason of liability imposed by law because of loss caused by its rendering or failure to render "any professional service," *id.* ¶ 98, a term that was left undefined in the Policy. Significantly, the Travelers Policy provides that Travelers would provide "no broader coverage" than the AIG Policy. *Id.* ¶ 96. It further provides a "duty to assume control of the defense of any Claim or Suit seeking damages covered by this policy . . . when the [AIG Policy limit] has been exhausted by payment of judgments or settlements that would be covered by this policy." *Id.* ¶¶ 96-101 (alteration in original). It states that the AIG Policy's limit "shall not, for the purpose of determining when this policy applies, be reduced or exhausted by any payment . . . [of] damages which are not covered by [the Travelers Policy]." *Id.* ¶ 99.

## C. Scholastic's Claims for Coverage

Shortly after Vanderbilt initiated the Vanderbilt Action, Scholastic tendered a claim for coverage to AIG. *Id.* ¶ 102. AIG concluded that the claims brought in the Vanderbilt Action alleged "wrongful acts" that were covered by the AIG Policy. *See* ECF No. 157 ("Def.'s Opp'n

4

to Pl.'s SOMF"), ¶ 60.  As of July 2021, when Vanderbilt and Scholastic reached their

settlement, AIG had paid the vast majority — though not all — of Scholastic's defense costs.

*Id.* ¶ 61.  AIG paid the remaining balance of its policy limit to Scholastic to indemnify it for the

settlement itself.  *See* Def.'s SOMF ¶ 119; Def.'s Opp'n to Pl.'s SOMF ¶¶ 60-62.  Scholastic

then turned to Travelers to pay the balance — both the defense costs that it had incurred that AIG

had not paid and the balance of its settlement costs.  Def.'s Opp'n to Pl.'s SOMF ¶ 63.  After

investigating Scholastic's claim, Travelers denied coverage, arguing that it had no obligation to

defend or indemnify Scholastic.  *See* Def.'s SOMF ¶ 115.

**D.  This Lawsuit**

This lawsuit followed.  In its Complaint, Scholastic seeks a declaratory judgment that

Travelers has a duty to defend and indemnify Scholastic for its remaining losses from the

Vanderbilt Action, including the defense costs that AIG did not pay and the balance of its

settlement costs.  ECF No. 28 ("Complaint"), at Prayer for Relief ¶¶ 1-2.  Scholastic also brings

a claim for breach of contract and/or the duty of good faith and fair dealing, in connection with

which it seeks both actual and consequential damages.  *Id.* ¶ 79 & Prayer for Relief ¶ 3.  Earlier

in the litigation, Travelers filed a motion for judgment on the pleadings pursuant to Rule 12(c) of

the Federal Rules of Civil Procedure.  *See* ECF No. 65.  As relevant here, Travelers argued that

the losses due to Vanderbilt's trademark infringement claim were not covered under the

Travelers Policy because the claim was based on Scholastic's "fail[ure] to obtain Vanderbilt's

permission before using Vanderbilt's Trademarks in its *advertising and marketing materials . . .*

'in order to enrich [itself]'" and that advertising and marketing products is not "a 'professional

service' [that] requires the use of the special acumen and training of a professional in performing

a service for another."  ECF No. 67 ("Def.'s Rule 12(c) Mem."), at 14-15.  And Travelers argued

that the losses due to Vanderbilt's contract claim were not covered under the Travelers Policy both because breach of contract is not a "wrongful act" covered by the AIG Policy (and thus is necessarily not covered by the Travelers Policy given the "no broader coverage" clause in the Travelers Policy) and because, as a matter of law, a breach of contract cannot be covered under professional liability insurance policies. *See id.* at 8-12.

The Court rejected these arguments in an oral ruling delivered on July 2, 2024. *See* ECF No. 142-14 ("Rule 12(c) Op.").[1] With respect to the trademark infringement claim, the Court reasoned that Travelers's argument "mischaracterize[d] Vanderbilt's allegations in the underlying action." *Id.* at 3. Count III of the complaint in the Vanderbilt Action, the Court continued, "describe[d] the allegedly infringing conduct as the 'unauthorized advertisement, promotion, display, offering for sale, sale, and distribution of Scholastic's goods and services bearing Vanderbilt's Marks.' Thus, the allegations [did] not rest exclusively on Scholastic's advertising and marketing activities; instead, they [were] directed at a core 'professional service' undertaken by Scholastic, including developing, publishing, and, of course, selling educational products." *Id.* at 3-4 (citations omitted). The Court acknowledged that Travelers's arguments as to the breach of contract claim had "more force," but it found them wanting too. *Id.* at 4. New York law, the Court explained, did "not support the categorical rule pressed by [Travelers]"; *id.* at 5, instead, "a claim may be insurable, even if pleaded as a breach of contract, if the alleged breach is 'occasioned by' conduct that falls within the scope of the relevant policy." *Id.* Based on the allegations in Scholastic's Complaint, the Court concluded that the breach alleged by Scholastic was at least "arguably" insurable under the Travelers Policy because it "was premised

---

[1]     Citations to the Court's ruling are to the transcript pages.

on the alleged infringement" — i.e., misappropriation — "as opposed to simple failure to pay." *Id.* at 8.

Following the completion of discovery, the parties filed the instant cross-motions for summary judgment and motions to exclude experts, all of which are now ripe for decision.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

Where both sides move for summary judgment, as here, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). "[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id*. (internal

7

quotation marks omitted).  To defeat a summary judgment motion, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible."  *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

The parties agree that New York law governs the Travelers Policy.  *See* ECF No. 131 ("Def.'s Mem."), at 14; ECF No. 141 ("Pl.'s. Mem."), at 10; *see also Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991) (stating that "New York courts generally defer to the choice of law made by the parties to a contract").  "Under New York law, contracts of insurance are strictly construed in favor of the insured and against the insurer." *U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc.*, 256 F. Supp. 2d 176, 180 (S.D.N.Y. 2003).  "When construing insurance policies, the language of the contracts must be interpreted according to common speech and consistent with the reasonable expectation of the average insured."  *In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1151 (N.Y. 2016) (internal quotation marks omitted); *see also Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88, 90 (2d Cir. 2009) ("Under New York law, an insurance contract must be interpreted so that a clear and unambiguous policy provision is given its plain and ordinary meaning.").  Any "[a]mbiguities in an insurance policy are to be construed against the insurer."  *Dean v. Tower Ins. Co. of New York*, 979 N.E.2d 1143, 1145 (N.Y. 2012) (internal quotation marks omitted); *see also Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 698 (2d Cir. 1998) ("[I]t is fundamental that

8

ambiguities in an insurance policy must be construed against the insurer." (internal quotation marks omitted)).

## DISCUSSION

Scholastic argues that Travelers is obligated under the Travelers Policy to pay the balance of its defense and settlement costs for the Vanderbilt Action. Scholastic also seeks consequential damages, alleging that Travelers breached its duty of good faith and fair dealing. The Court will address each issue in turn, beginning with the costs of the settlement with Vanderbilt.

### A. Settlement Costs

The Court begins with whether Travelers is obligated to pay the portion of the settlement with Vanderbilt that AIG did not cover. Under New York law, an insurer's "duty to indemnify requires a covered loss." *Servidone Constr. Corp. v. Security Ins. Co. of Hartford*, 64 N.Y.2d 419, 425 (1985). The insured has the burden to prove in the first instance that a loss falls within the scope of the policy's coverage. *See, e.g., Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 121 (2d Cir. 2012). As relevant here, "[a] liability insurer's duty to indemnify its insured does not depend on whether the insured settles or loses the case." *K2 Inv. Grp., LLC v. Am. Guarantee & Liab. Ins. Co.*, 6 N.E.3d 1117, 1119 (N.Y. 2014). Moreover, an insured seeking coverage for the settlement of a claim need not prove actual liability of that underlying claim; it must merely demonstrate that the settled claim constitutes a covered loss. *See Servidone Const. Corp.*, 64 N.Y.2d at 425 ("The duty to indemnify requires a covered loss, but it should be apparent that a plenary trial of the issue is not always necessary.").

9

The Court concludes that the entire settlement amount for the Vanderbilt Action is a covered loss falling within the scope of the Travelers Policy.[2] Notably, in arguing otherwise, Travelers largely rehashes arguments that it made in its motion for judgment on the pleadings — arguments the Court already considered and rejected. First, Travelers contends, as it did before, that the settlement of Vanderbilt's claims is not covered because the losses were not "caused by the rendering of, or failure to render, any professional service by or on behalf of [Scholastic]." Def.'s SOMF ¶¶ 96-97; *see* Def.'s Mem. 18-19, 20-22; *see also* Def.'s Rule 12(c) Mem. 12-13. The Travelers Policy does not provide a definition for "professional services," but under New York law the phrase means services requiring "special acumen and training." *Beazley Ins. Co., Inc. v. ACE Am. Ins. Co.*, 880 F.3d 64, 71 (2d Cir. 2018); *see also Albert J. Schiff Assocs., Inc. v. Flack*, 417 N.E.2d 84, 88 (N.Y. 1980) ("An errors and omissions policy is intended to insure a member of a designated calling against liability arising out of the mistakes inherent in the practice of that particular profession or business."). Here, despite Travelers's claims to the contrary, Vanderbilt's allegations did not rest exclusively on Scholastic's advertising and marketing activities; instead, as the Court previously concluded, they were "directed at a core 'professional service' undertaken by Scholastic, including developing, publishing, and, of course, selling educational products," namely, the design, publication, and sale of its various educational technology products — Read 180, FASTT Math, System 44, iRead, and Math 180. Rule 12(c) Op. 5. Nor, as Travelers now contends, *see* Def.'s Mem. 21-22, does the fact that Scholastic may have used Vanderbilt's marks on its own products defeat its entitlement to

---

[2] For that reason, the Court need not and does not resolve the parties' disputes over how the settlement should be allocated as between the trademark infringement claim and the breach of contract claim. *Compare* Def.'s Mem. 23, *with* Pl.'s Mem. 31. Nor does the Court need to resolve each side's motions to preclude the other side's experts. *See* ECF Nos. 105, 113.

coverage, *see, e.g.*, *Beazley*, 880 F.3d at 71-72 (holding that a securities fraud claim based on alleged misstatements in the defendant company's own advertising materials nevertheless arose out of the company's provision of professional services, not from its general advertising activities).

Second, Travelers also reprises its arguments that an insured cannot, as a matter of law, get coverage for losses due to a breach of contract and that breach of contract is not a "wrongful act" within the meaning of the AIG Policy (and, thus, not covered under the Traveler Policy given its "no broader coverage" clause). *See* Def.'s Mem. 15-20; *see also* Def.'s Rule 12(c) Mem. 8-12. But neither the AIG Policy nor the Travelers Policy explicitly excludes coverage for breach of contract. And as the Court previously ruled, New York law is not as categorical as Travelers suggests. Instead, "a claim may be insurable, even if pleaded as a breach of contract, if the alleged breach is 'occasioned by' conduct that falls within the scope of the relevant policy. Put differently: 'It is not the form of the pleading which determines coverage . . . , it is the nature of the insured's conduct . . . .'" Rule 12(c) Op. 5-6 (quoting first *Wentworth Grp. Inc. v. Evanston Ins. Co.*, 2021 WL 2828838, at *8 (S.D.N.Y. July 8, 2021), then *Touchette Corp. v. Merchants Mut. Ins. Co.*, 429 N.Y.S.2d 952, 954 (App. Div. 4th Dep't 1980)). Here, Vanderbilt's breach of contract claim was not premised on Scholastic's mere failure to pay an agreed upon amount; instead, it was premised on a separate act — namely, Scholastic's purported misappropriation of Vanderbilt's intellectual property. In other words, Vanderbilt would have been entitled to relief even if the License Agreement did not exist. And not for

11

nothing, the AIG Policy *expressly* defines "wrongful acts" to include "misappropriation of ideas" and "misappropriation of property rights, ideas, or information." Def.'s SOMF ¶ 90.[3]

In arguing otherwise, Travelers contends that any damages owed by Scholastic could not be due to "misappropriation" within the meaning of the AIG Policy because, through the License Agreement, it had an exclusive license to use Vanderbilt's intellectual property. Def.'s Reply 16-17. But, at bottom, that contention is just another version of Travelers's principal argument that Scholastic could not recover for losses caused by a breach of contract as a categorical matter. Moreover, it does not follow from the fact that Scholastic and Vanderbilt had a contractual relationship that Vanderbilt's claim could not sound in misappropriation. In point of fact, under New York law, the existence of a contractual relationship is one way to satisfy an essential element of a misappropriation claim. *See, e.g.*, *Turner v. Temptu, Inc.*, 586 Fed. App'x 718, 721-22 (2d Cir. 2014) (summary order); *McGhan v. Ebersol*, 608 F. Supp. 277, 284 (S.D.N.Y. 1985). And ultimately, to the extent there is any uncertainty as to the meaning of "misappropriation" in the AIG Policy and whether it would encompass Vanderbilt's contract claim, the ambiguity must be construed in favor of providing insurance to Scholastic. *See, e.g.*, *Haber*, 137 F.3d at 698.

---

[3]    In its reply, Travelers tries to get around this Court's earlier ruling by noting that it "was based on the pleadings, not the complete factual record currently before the Court." ECF No. 165 ("Def.'s Reply"), at 15. True enough, but Travelers identifies nothing in the record that would affect the Court's conclusions. The only piece of evidence to which it points is the License Agreement, *see id.* at 15-16, but — putting aside whether the Court could have considered the License Agreement as integral to the pleadings in connection with the earlier motion — Travelers fails to explain what difference the License Agreement makes to the analysis.

12

In sum, the Court concludes that both of the settled claims in the Vanderbilt Action are covered losses and, therefore, that Travelers must pay the balance of the settlement amount owed by Scholastic.

## B. Defense Costs

As noted, Scholastic also argues that Travelers is obligated to pay the balance of the defense costs it incurred in defending the Vanderbilt Action. "[A]n insurer's duty to defend presents a question of law appropriate for resolution by summary judgment." *Wausau Underwriters Ins. Co. v. QBE Ins. Corp.*, 496 F.Supp.2d 357, 360 (S.D.N.Y. 2007). "Under New York law, a primary insurer has the primary duty to defend on behalf of its insured without the right to contribution from an excess insurer." *Barber v. RLI Ins. Co.*, No. 06-CV-630 (FJS) (RFT), 2008 WL 5423106, at *2 (N.D.N.Y. Dec. 24, 2008); *see Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*, 16 N.Y.3d 257, 265 (2011) ("A primary insurer . . . generally has no entitlement to contribution from an excess insurer." (internal quotation marks omitted)). "Excess liability policies," like the Travelers Policy at issue here, "provide an additional layer of coverage for losses that exceed the limits of a primary liability policy," and "[c]overage under an excess policy . . . is triggered when the liability limits of the underlying primary insurance policy have been exhausted." *Ali v. Fed. Ins. Co.*, 719 F.3d 83, 90 (2d Cir. 2013).

Travelers's principal argument against Scholastic's claim for its defense costs — that the losses due to Vanderbilt's claims were not covered under the Travelers Policy — fails for the reasons discussed above.[4]  But Travelers separately argues that it has no obligation to reimburse Scholastic because the defense costs were incurred prior to August 25, 2021, when AIG's policy

---

[4]     On top of that, the argument ignores the fact that some of Scholastic's defense costs were attributable to claims that were dismissed during the course of the Vanderbilt Action, including an explicit claim of misappropriation.  Def.'s SOMF ¶ 57.

limit was exhausted. Def.'s Mem. 25. The Court concludes otherwise. First, it would make little sense to conclude that Travelers is required to pay the balance of the settlement but not the balance of Scholastic's defense costs when, in theory, AIG could have allocated its payment in the first instance to Scholastic's defense costs and then to the settlement — and the balance of unpaid costs would have been the same. *See, e.g.*, *Carrier Corp. v. Allstate Ins. Co.*, 113 N.Y.S.3d 472, at *5 (N.Y. Sup. Ct. 2018) (table) ("An excess insurer may not challenge the propriety of a primary insurer's payment or allocation decisions absent collusion to defraud the excess insurer."). Second, per the Travelers Policy's terms, Travelers agreed to "continue in force as underlying insurance" "in the event of exhaustion of the limits of the Scheduled Underlying Insurance or the Scheduled Retained Limit." ECF No. 28-3 ("Travelers Policy"), at 16. Such language indicates that "[the excess policy] coverage begins where the responsibility of the primary policy ends." *Allstate Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 83-CV-3198 (PNL), 1984 WL 1969, at *1 (S.D.N.Y. Nov. 30, 1984) (Leval, J.); *see also Danaher Corp. v. Travelers Indem. Co.*, 414 F. Supp. 3d 436, 455 (S.D.N.Y. 2019) ("[The excess insurer] now sits in the position of a primary insurer of the risks of loss stemming from the Underlying Claims[.]"). *But see Schneider Nat. Transp. v. Ford Motor Co.*, 280 F.3d 532, 539 (5th Cir. 2002) (holding that, under Texas law, an insurer has "no obligation to pay for costs and expenses incurred until after the payout of the first settlement"). Accordingly, when, on August 21, 2021, the AIG Policy was exhausted, Travelers stepped into AIG's shoes and became responsible for any losses covered by the AIG Policy that also fell within the scope of the Travelers Policy, which included the outstanding defense costs.

Travelers's attempts to avoid this conclusion are unavailing. Put simply, it fails to identify any language in the Travelers Policy suggesting that its coverage is limited only to the

14

losses that Scholastic incurred before the date that the primary policy is exhausted.  Construing

the Policy to exclude defense costs incurred prior to exhaustion of the AIG Policy,

notwithstanding the "continue in force" provision, would lead to a "[s]trained and unnatural

reading[]" of the policy terms, which courts strive to avoid.  *See, e.g.*, *1070 Park Ave. Corp. v.*

*Fireman's Fund Ins. Co.*, 313 F. Supp. 3d 528, 538 (S.D.N.Y. 2018).  Nor does Travelers cite

any authority suggesting that the specific date that an insurance policy is exhausted, without

more, affects the amount of losses that an excess insurer must cover.  The only relevant dates are

those that define the policy period, and neither party disputes that the unpaid defense costs arose

from actions that took place during that period.  In any event, even if Travelers's reading of the

Policy were reasonable, the terms would be ambiguous at best.  And, as noted, the Court must

construe any ambiguity in Scholastic's favor.  *See, e.g., Haber*, 137 F.3d at 698; *cf. E.R. Squibb*

*& Sons, Inc. v. Accident & Cas. Ins. Co.*, No. 82-CV-7327 (VLB), 1992 WL 133899, at *8

(S.D.N.Y. Apr. 21, 1992) ("[W]here a clause in an [excess insurer's] policy provides that

coverage 'shall apply as underlying insurance, notwithstanding anything to the contrary in the

terms and conditions of this policy,' no prohibition on liability for legal defense costs in that

policy shall be applicable where the conditions for applicability of the quoted clause are met.").

In short, the Court concludes that Travelers must cover all remaining defense costs even

though Scholastic incurred such costs prior to August 25, 2021.

## C.  Consequential Damages

By contrast, the Court concludes Scholastic's request for "consequential damages" fails

as a matter of law.  First, Scholastic fails to identify any damages to which it would be entitled

other than its actual damages, namely the balance of its defense and settlement costs.[5]  Second, to the extent that the request for consequential damages is tethered to a claim that Travelers breached the implied covenant of good faith and fair dealing, *see* Complaint ¶¶ 73-76, that claim is duplicative of Scholastic's claim for breach of contract.  *See, e.g.*, *Henderson v. Physician Affiliate Grp. of New York P.C.*, No. 18-CV-3430 (JMF), 2019 WL 3778504, at *7 (S.D.N.Y. Aug. 12, 2019) ("An implied-covenant claim can survive a motion to dismiss only if it is based on allegations different than those underlying the accompanying breach of contract claim and the relief sought is not intrinsically tied to the damages allegedly resulting from the breach of contract." (internal quotation marks omitted)).  Third, and in any event, Scholastic points to no evidence that Travelers breached its duty of good faith and fair dealing; that it sustained damages as a result of such a breach; or that those damages were contemplated by Travelers and Scholastic when the Travelers Policy was issued.  *See, e.g.*, *Goldmark, Inc. v. Catlin Syndicate Ltd.*, No. 09-CV-3876 (RRM) (RER), 2011 WL 743568, at *3 (E.D.N.Y. Feb. 24, 2011) (citing cases).  In arguing otherwise, Scholastic merely asserts in conclusory fashion that "fact issues remain as to whether Travelers' failure to properly adjust Scholastic's claim is a breach of the covenant of good faith and fair dealing."  ECF No. 145, at 40.  But that is not enough to withstand summary judgment.  Accordingly, Travelers's motion for summary judgment on Scholastic's claim for consequential damages must be and is granted.

## CONCLUSION

For the foregoing reasons, the Court concludes that Travelers must pay both the outstanding defense and settlement costs that Scholastic incurred in connection with the

---

[5]     The Court previously dismissed Scholastic's request to recover its fees in this litigation. *See* ECF No. 36, at 2-3.

Vanderbilt Action but is not liable for any consequential damages. Accordingly, Scholastic's motion for summary judgment is GRANTED in part and DENIED in part, as is Travelers's cross-motion. In light of those rulings, the parties' motions to exclude are DENIED as moot.

Scholastic shall confer with Travelers and, **within one week of the date of this Opinion and Order**, file a proposed judgment consistent with this Opinion and Order.

The Clerk of Court is directed to terminate ECF Nos. 99, 100, 105, 113, and 140.

SO ORDERED.

Dated: September 15, 2025
       New York, New York

                                        _____
                                        JESSE M. FURMAN
                                        United States District Judge

17

# ADDENDUM D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SCHOLASTIC INC.<br><br>                              Plaintiff,<br><br>        vs.<br><br>ST. PAUL FIRE AND MARINE INSURANCE COMPANY,<br><br>                              Defendant. | Case No. 1:23-cv-03485-JMF<br><br>[PROPOSED] ORDER AND FINAL JUDGMENT |

**THIS MATTER** having come before the Court by Plaintiff Scholastic Inc.'s

("Scholastic") and Defendant St. Paul Fire and Marine Insurance Company's ("Travelers")

cross-motions for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil

Procedure (the "Cross-Motions"); and the Court having considered the papers submitted in

support of and in opposition to the Cross-Motions; and for good cause shown, it is hereby

**ORDERED, ADJUDGED, and DECREED** that the Cross-Motions are both **GRANTED** in part, and **DENIED** in part.

**ORDERED, ADJUDGED, and DECREED** that Travelers must reimburse Scholastic for all the outstanding defense costs and settlement amounts Scholastic incurred in connection with the litigation styled *Vanderbilt University v. Scholastic, Inc., et al*, Civil Action No. 3:18-cv-0046, plus pre- and post-judgment interest pursuant to CPLR §§ 5001-5004.

**IT IS FURTHER ORDERED, ADJUDGED, and DECREED** that Scholastic is hereby awarded a money judgment against Travelers in the sum of (i) $14,254,283.74; (ii) plus the statutory pre-judgment interest of nine (9) per centum per annum on the amount of $14,254,283.74, pursuant to CPLR §§ 5001, 5004, to be computed from August 26, 2021[1] through the date of judgment, in the amount of $ 5,244,014.30 ; and (iii) plus the post-judgment interest at the federal rate under 28 U.S.C. § 1961 on the amount of $14,254,283.74, pursuant to CPLR § 5002, to be computed from the date of judgment until payment. For a total money judgment against Travelers, including pre-judgment interest to the date of entry of this Judgment, in the amount of $ 19,498,298.04 , plus post-judgment interest.

**IT IS FURTHER ORDERED, ADJUDGED, and DECREED** that all remaining claims in this action are hereby **DISMISSED** with prejudice.

---

[1] August 26, 2021 is the date upon which the underlying AIG Policy exhausted, and triggered Travelers' obligation to cover Scholastic.

DOCS-100825574.1

This constitutes the Order and Final Judgment of the Court.

**IT IS SO ORDERED AND ENTERED:**

_____

HON. JESSE M. FURMAN
**United States District Judge**


Judgment entered this _25_ day of September, 2025


_____

**Clerk**