# 25-2505

# United States Court of Appeals
## *for the*
## Second Circuit

SCHOLASTIC INC.,

*Plaintiff-Appellee,*

– v. –

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

# FINAL FORM BRIEF FOR PLAINTIFF-APPELLEE
# (REDACTED)

DIANA SHAFTER GLIEDMAN
CORT T. MALONE
THOMAS DUPONT
AMY WEISS
ANDERSON KILL P.C.
7 Times Square, 15th Floor
New York, New York 10036
(212) 278-1000

*Attorneys for Plaintiff-Appellee*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Plaintiff-Appellee Scholastic Inc., by and through its undersigned counsel, hereby certifies that Scholastic Corporation is a publicly held corporation owning 10% or more of Scholastic Inc.'s stock.

ANDERSON KILL P.C.

By:  */s/ Diana Shafter Gliedman*
Diana Shafter Gliedman, Esq.
Cort T. Malone, Esq.
Thomas Dupont, Esq.
Amy Weiss, Esq.
7 Times Square, 15th Floor
New York, NY 10036
Telephone: (212) 278-1000
Email:  dgliedman@andersonkill.com
cmalone@andersonkill.com
tdupont@andersonkill.com
aweiss@andersonkill.com

*Attorneys for Plaintiff-Appellee Scholastic Inc.*

i

# TABLE OF CONTENTS

                                                                    Page

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ............................................................................... v

PRELIMINARY STATEMENT ..........................................................................1

COUNTER-STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .........2

COUNTER-STATEMENT OF THE CASE ..........................................................4

I.    Factual Background ...............................................................................4

      A.    Scholastic's Development of READ 180 and the Allegedly
            Derivative Products ...................................................................4

      B.    The Vanderbilt Action.................................................................5

            1.    The Vanderbilt Complaint Alleged that Scholastic
                  Misappropriated Vanderbilt's Intellectual Property. ..................6

            2.    The Parties Engaged in Extensive Discovery to Determine
                  Whether Scholastic Misappropriated Vanderbilt's
                  Intellectual Property. ..............................................................7

            3.    On Summary Judgment, the Vanderbilt Action Parties
                  Disputed Whether the Allegedly Derivative Products
                  Incorporated Any of Vanderbilt's Intellectual Property.............8

            4.    The Vanderbilt Action Parties Settled to Resolve the
                  Remaining Trademark Infringement and Breach of
                  Contract Claims..................................................................10

      C.    Scholastic's Claim for Insurance Coverage ........................................10

            1.    The AIG Policy Covers the Wrongful Act of Alleged
                  Misappropriation in the Performance of Scholastic's
                  Publishing Services..............................................................11

ii

2. The Travelers Professional Liability Endorsement Covers Scholastic's Losses Caused by the Rendering of Any Professional Service. ...................................................................12

3. Despite AIG Covering Scholastic's Defense Costs and the Vanderbilt Settlement, Travelers Denied Coverage. ................14

II. Procedural History ...........................................................................15

A. The District Court Denied Travelers' Motion for Judgment on the Pleadings. ...........................................................................15

B. On Summary Judgment, the District Court Ruled that Both the Trademark Infringement and Breach of Contract Claims Are Covered. ............................................................................................17

SUMMARY OF ARGUMENT ........................................................................19

ARGUMENT .........................................................................................................21

I. Standard of Review ..........................................................................21

II. Both the AIG and Travelers Policies Cover Vanderbilt's Breach of Contract Claim. ...............................................................................22

A. The AIG Policy Covers Vanderbilt's Breach of Contract Claim Because It Is Premised Upon the Covered Alleged Wrongful Act of Misappropriation. ............................................................................22

1. In Accordance with New York Law, the AIG Policy Covers Vanderbilt's Breach of Contract Claim if It Is Occasioned by Allegations of Misappropriation. .....................23

2. Vanderbilt's Breach of Contract Claim Is Occasioned by Allegations of Misappropriation. ...............................................25

B. The Travelers Policy Covers Vanderbilt's Breach of Contract Claim Because It Is Based on Scholastic's Professional Services. ......29

1. Scholastic's Publishing Services Are Covered Professional Services Under the Travelers Policy. ........................................30

iii

2.      Vanderbilt's Breach of Contract Claim Was "Caused By" Scholastic's Publishing Services. .............................................31

C.    Travelers' Arguments Ignore the Controlling Language of the AIG and Travelers Policies. .................................................33

1.      Travelers' New York Cases Do Not Apply Because, Unlike Vanderbilt's Breach of Contract Claim, They Do Not Involve Allegations that Trigger Coverage for Expressly Covered "Wrongful Acts."......................................34

2.      Travelers' New York Cases Do Not Apply Because, Unlike Vanderbilt's Breach of Contract Claim, They Do Not Implicate Covered Professional Services. ........................40

3.      Travelers' Cases from Other Jurisdictions Do Not Apply and Cannot Override the Controlling Policy Language or New York Law................................................................43

4.      There Is No "Windfall" in Compelling Travelers to Pay a Covered Claim. ...................................................................47

III.    There Is No "Failure" to Allocate Because the Entire Vanderbilt Settlement Is Covered..................................................................49

IV.    Travelers Is Obligated to Pay Defense Costs AIG Had Not Yet Reimbursed When AIG Exhausted Its Limits by Paying the Vanderbilt Settlement. ......................................................................54

CONCLUSION..............................................................................................58

CERTIFICATE OF COMPLIANCE.........................................................60

CERTIFICATE OF SERVICE ...................................................................61

iv

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert J. Schiff Assocs., Inc. v. Flack,*
   417 N.E.2d 84 (N.Y. 1980)....................................................................30, 41, 42

*Am. Cas. Co. of Reading, Pa. v. Hotel & Rest. Emps. & Bartenders*
   *Int'l Union Welfare Fund,*
   942 P.2d 172 (Nev. 1997)..............................................................................44, 45

*Beazley Ins. Co., v. ACE Am. Ins. Co.,*
   880 F.3d 64 (2d Cir. 2018) ..................................................................................30

*Bogle-Assegai v. Connecticut,*
   470 F.3d 498 (2d Cir. 2006) ...............................................................................21

*Carrier Corp. v. Allstate Ins. Co.,*
   113 N.Y.S.3d 472, 2018 WL 7137965 (Sup. Ct. 2018) ....................................56

*Clifford Chance Ltd. Liab. P'ship v. Indian Harbor Ins. Co.,*
   14 Misc.3d 1209(A), 2006 WL 3821841 (N.Y Sup. Ct. 2006),
   *aff'd,* 838 N.Y.S.2d 62 (App. Div. 1st Dep't 2007) .........................................52

*Clifford Chance Ltd. Liab. P'ship v. Indian Harbor Ins. Co.,*
   838 N.Y.S.2d 62 (App. Div. 1st Dep't 2007)......................................................51

*Doe v. Trump Corp.,*
   6 F.4th 400 (2d Cir. 2021) ...................................................................................22

*Evanston Ins. Co. v. Napoli Bern Ripka & Assocs.,*
   No. 18-cv-7027 (AKH), 2019 WL 10966201 (S.D.N.Y.
   June 28, 2019)................................................................................ 34-35, 36, 37

*Haber v. St. Paul Guardian Ins. Co.,*
   137 F.3d 691 (2d Cir. 1998) ................................................................................58

*Health Net, Inc. v. RLI Ins. Co.,*
   206 Cal. App. 4th 232 (2012) ..............................................................................44

*High Point Design, LLC v. LM Ins. Corp.,*
   No. 14-CV-7878 (KBF), 2016 WL 426594 (S.D.N.Y.
   Feb. 3, 2016) .......................................................................................................51

# TABLE OF AUTHORITIES
## *(Continued)*

**Page(s)**

*Kramer v. Dep't of Corr.*,
828 F. Appx. 78 (2d Cir. 2020) .................................................................49

*Luria Bros. & Co. v. All. Assur. Co., Ltd.*,
780 F.2d 1082 (2d Cir. 1986) ...................................................................50

*Mandel Resnik Kaiser Moskowitz & Greenstein P.C. v. Exec. Risk Indem. Inc.*,
No. 03 CIV 8019 (BSJ), 2005 WL 1712024 (S.D.N.Y. July 15, 2005)............................................................................... 42-43

*McGhan v. Ebersol*,
608 F. Supp. 277 (S.D.N.Y. 1985) .....................................................26, 37, 48

*Morris v. Loc. 819, Int'l Bhd. of Teamsters*,
169 F.3d 782 (2d Cir. 1999) .....................................................................21

*Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*,
277 F.3d 232 (2d Cir. 2002) .................................................................24, 33

*Napoli Shkolnik, PLLC v. Greenwich Ins. Co.*,
142 N.Y.S.3d 810 (App. Div. 1st Dep't 2021).............................................41, 42

*In re Nortel Networks Corp. Sec. Litig.*,
539 F.3d 129 (2d Cir. 2008) .................................................................22, 57

*Olin Corp. v. Lamorak Ins. Co.*,
332 F. Supp. 3d 818 (S.D.N.Y. 2018) ..............................................................56

*Pacific Ins. Co. v. Eaton Vance Mgmt.*,
369 F.3d 584 (1st Cir. 2004)......................................................................44

*Palmieri v. Lynch*,
392 F.3d 73 (2d Cir. 2004) ........................................................................49

*PepsiCo, Inc. v. Cont'l Cas. Co.*,
640 F. Supp. 656 (S.D.N.Y. 1986) .................................................................51

*St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*,
No. 14-CV-8002 (JSR), 2015 WL 5440694 (S.D.N.Y. Sept. 9, 2015).................................................................................51

vi

# TABLE OF AUTHORITIES
## *(Continued)*

**Page(s)**

*Touchette Corp. v. Merchants Mut. Ins. Co.*,
   429 N.Y.S.2d 952 (App. Div. 4th Dep't 1980) ............................... 23-24, 44, 46

*Triodetic Inc. v. Statue of Liberty IV, LLC*,
   582 F. App'x 39 (2d Cir. 2014) ........................................................49

*Turner v. Temptu, Inc.*,
   586 F. App'x 718 (2d Cir. 2014) .....................................................37

*U.S. Fid. & Guar. Co. v. Annunziata*,
   492 N.E.2d 1206 (N.Y. 1986)................................................24, 33, 46

*Uvino v. Harleysville Worcester Ins. Co.*,
   No. 13 Civ. 4004 (NRB), 2015 WL 925940 (S.D.N.Y.
   Mar. 4, 2015)................................................................................51, 52

*Waltuch v. Conticommodity Servs., Inc.*,
   88 F.3d 87 (2d Cir. 1996) ................................................................51

*Waste Corp. of America, Inc. v. Genesis Ins. Co.*,
   382 F. Supp. 2d 1349 (S.D. Fla. 2005), *aff'd*, 209 F. App'x 899
   (11th Cir. 2006).........................................................................45, 46

*Wentworth Grp. Inc. v. Evanston Ins. Co.*,
   No. 20-CV-6711, 2021 WL 2828838 (S.D.N.Y. July 8, 2021)..............23, 24, 44

*Women's Integrated Network, Inc. v. U.S. Specialty Ins. Co.*,
   No. 08 Civ. 10518 (SCR), 2012 WL 13070116 (S.D.N.Y.
   Oct. 26, 2012) .............................................................34, 35, 36, 37

## PRELIMINARY STATEMENT

In this action, Plaintiff-Appellee Scholastic Inc. ("Scholastic"), a well-known publisher and developer of children's books and educational materials, seeks insurance coverage for claims related to its professional services.

In 1997, Scholastic entered into a licensing agreement with Vanderbilt University ("Vanderbilt"), which gave Scholastic the right to take literacy software created by Vanderbilt and develop it into a marketable product that ultimately was named "READ 180." Years later, Vanderbilt sued Scholastic, alleging that Scholastic infringed on Vanderbilt's trademarks and breached the licensing agreement by misappropriating Vanderbilt's intellectual property to create other products (the "Vanderbilt Action"). Scholastic argued that these other products were not derived from Vanderbilt's literacy software, were independently created, and were not covered by the licensing agreement.

During the extensive litigation and ultimate settlement of the Vanderbilt Action, Scholastic's primary professional liability insurance company, AIG, defended the case and then paid its remaining policy limits toward the settlement because the Vanderbilt Action alleged covered wrongful acts under the terms of the AIG policy. Scholastic's excess professional liability insurance company, Travelers, provided coverage under even broader policy language than AIG for claims based on any of Scholastic's professional services. However, Travelers

1

ultimately denied Scholastic's claim for coverage of the Vanderbilt Action, refusing to pay Scholastic's remaining defense costs or the remainder of the settlement.

In this insurance coverage action, Travelers first moved for judgment on the pleadings, which was denied by the District Court. Following discovery, Scholastic and Travelers cross-moved for summary judgment. The District Court correctly held that both claims in the Vanderbilt Action were covered by the AIG and Travelers policies and entered judgment in favor of Scholastic. Because Travelers' arguments on appeal lack any legal or factual support, this Court should affirm the District Court's well-reasoned summary judgment decision.

## COUNTER-STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the District Court properly granted in part Scholastic's Motion for Summary Judgment because both the Vanderbilt Breach of Contract and Trademark Infringement Claims are covered under the Travelers Policy.

2. Whether the District Court properly denied in part Travelers' Cross-Motion for Summary Judgment because both the Vanderbilt Breach of Contract and Trademark Infringement Claims are covered under the Travelers Policy.

2

3.  Whether the District Court properly held that Vanderbilt's Breach of Contract Claim is covered under the Travelers Policy because it alleges the covered wrongful act of misappropriation in the rendering of Scholastic's professional publishing services.

4.  Whether the District Court properly held that no allocation of the Vanderbilt Settlement is necessary because both the Vanderbilt Breach of Contract and Trademark Infringement Claims are covered under the Travelers Policy.

5.  Whether the District Court properly held that the settlement amount for the Vanderbilt Action is a covered loss falling within the scope of the Travelers Policy.

6.  Whether the District Court properly held that Scholastic's defense costs that had not yet been reimbursed at the time of the Vanderbilt Settlement became Travelers' responsibility upon the proper exhaustion of Scholastic's primary insurance.

## COUNTER-STATEMENT OF THE CASE

I. **Factual Background**

A. **Scholastic's Development of READ 180 and the Allegedly Derivative Products**

Scholastic is a leading provider of print and digital education programs and educational technology related services and children's media. (JA-1951, ¶ 5).[1] In 1997, Vanderbilt and Scholastic entered into a license agreement (the "License Agreement") whereby Scholastic agreed to use its "expertise, ability, and wherewithal" to take software developed to improve middle school literacy created by Vanderbilt professor Dr. Ted Hasselbring and develop it into a product that could be effectively produced, promoted, marketed, and distributed in the special education space. (JA-1089, at 1090 & Exhibit A at 1104-1132). Under the License Agreement, Scholastic agreed to pay royalties on "products using or based on [Vanderbilt's licensed materials]" and "software products based on or derived from [Vanderbilt's licensed materials]." (JA-1089, §§ 6.2, 9.1).

Using Dr. Hasselbring's computer software as a prototype, Scholastic created a commercially viable educational software program, which it branded as READ 180. (JA-1951, ¶ 8). Scholastic also developed, published, and distributed certain non-software components for the READ 180 program, such as teacher

---

[1] Citations to the Joint Appendix are indicated by "JA." Citations to the Sealed Appendix are indicated by "SA."

guides, teacher training materials, and cloud storage devices (the "READ 180 Non-software Components"). (JA-1951, ¶ 10).

Following the launch of READ 180, Scholastic developed other unrelated educational products (the "Other Scholastic Products") including: (1) *FASTT Math*, a math intervention program; (2) *System 44*, a phonics-based intervention program; (3) *iRead*, a non-intervention reading program; and (4) *MATH 180*, a math intervention program (the READ 180 Non-software Components and the Other Scholastic Products herein constitute the "Allegedly Derivative Products"). (JA-1951, ¶ 11).

## B. The Vanderbilt Action

In 2016, Vanderbilt hired an audit firm to examine whether Vanderbilt was due royalties under the License Agreement from Scholastic for the Allegedly Derivative Products. (JA-1951, ¶ 12). Based on the audit and public sales information, Vanderbilt commenced the Vanderbilt Action against Scholastic on January 16, 2018 and filed a First Amended Complaint on August 31, 2018. (JA-1133). Vanderbilt asserted eleven causes of action stemming from Scholastic's and other parties' alleged misuses of Vanderbilt's intellectual property. (JA-1133, ¶ 12).

5

### 1. The Vanderbilt Complaint Alleged that Scholastic Misappropriated Vanderbilt's Intellectual Property.

In Count 1 of Vanderbilt's Complaint, the "Breach of Contract Claim," Vanderbilt alleged that Scholastic breached the License Agreement by "[taking] Vanderbilt's confidential Read 180 Materials and us[ing] it for other purposes for which it failed to compensate Vanderbilt." (JA-1133, ¶ 73). Vanderbilt further alleged that the Allegedly Derivative Products incorporated or were derived from Vanderbilt's intellectual property and, therefore, allegedly were royalty-bearing under the License Agreement. (*See, e.g.*, JA-1133, at 1135 & ¶¶ 12, 60-61, 70).

In Count 3, the "Trademark Infringement Claim," Vanderbilt alleged that Scholastic's "unauthorized advertisement, promotion, display, offering for sale, sale, and distribution of Scholastic's . . . goods and services bearing Vanderbilt's Marks is likely to cause confusion, to cause mistake, or to deceive, in violation of § 32(1) of the United States Trademark Act, 15 U.S.C. § 1114(1)" and that "Scholastic's . . . use of Vanderbilt's Marks is likely to confuse and mislead consumers and cause damage to Vanderbilt's trademark and goodwill." (JA-1133, ¶¶ 89-90). Vanderbilt further asserted that Scholastic "repeatedly used Vanderbilt's intellectual property, registered name, logo, and associated goodwill in the design, development, marketing, and promotion of Scholastic's . . . products." (JA-1133, ¶ 65).

6

> **2.    The Parties Engaged in Extensive Discovery to Determine Whether Scholastic Misappropriated Vanderbilt's Intellectual Property.**

In discovery, Vanderbilt brought forward numerous experts on topics such as pedagogy, design, and technology to analyze to what extent, if any, Scholastic incorporated Vanderbilt's intellectual property into the Allegedly Derivative Products, and, if so, to calculate potential damages, including:

- Design and pedagogy expert Timothy Shanahan, Ph.D.  Dr. Shanahan analyzed whether *System 44*, *FASTT Math*, *iRead*, and *MATH 180* were "derived from or based on" the design features, structure, and pedagogical approach of the intellectual property Vanderbilt licensed to Scholastic under the License Agreement.  (JA-1374, at 1379-1380, 1384-1385, 1411-1412).  Mr. Shanahan asserted that "[*System 44*, *FASTT Math*, *iRead*, and *Math 180*] were 'based on or derived from' the innovations licensed by Vanderbilt University to Scholastic, Inc."  (JA-1374, at 1436).

- Software source code expert Bruce Webster.  Mr. Webster opined on alleged similarities between the software code in the Other Scholastic Products and Vanderbilt's licensed intellectual property.  (JA-2166, at 2174, 2176).  Mr. Webster also opined that *System 44* and *iRead* were based on or derived from Vanderbilt's licensed intellectual property "[b]ased on a separate analysis of common design elements[.]"  (JA-2048, at 2058).

- Damages expert Christopher M. Lovin, CPA/ABV/CFF, CFE.  Mr. Lovin opined that Scholastic could be liable for upwards of $108.6 million for Trademark Infringement damages, and up to $141.2 million for Breach of Contract damages.  (JA-1441, at 1511-1512, 1529).  Mr. Lovin's opinion was premised on Vanderbilt's assertion that "[Scholastic] ha[s] sold various products, specifically System 44, iRead, FASTT Math, and Math 180 . . . that are derivative works based on or derived from the Materials Vanderbilt licensed to Scholastic and that, accordingly, Vanderbilt should be paid royalties for sales of those Derivative Products."  (JA-1441, at 1451).

Scholastic produced experts to rebut the opinions of Vanderbilt's experts, (*see* JA-2166, at 2174), including:

- Pedagogy expert Cynthia Okolo, Ph.D.  Dr. Okolo disagreed with Shanahan's report, as well as Webster's report to the extent it addressed "pedagogical elements in materials licensed by Vanderbilt and educational programs offered by Scholastic[.]" (JA-2048, at 2056, 2058-2060).  "The Okolo Report demonstrated that the alleged pedagogical similarities between the [Peabody Program] and the Other Scholastic Products could not have been licensed by Vanderbilt[.]"  (JA-2166, at 2174).

- Source code expert Ronald S. Schnell.  Mr. Schnell "rebutted Mr. Webster's assertions of copying in the software code of the relevant products."  (JA-2166, at 2173-2174).

- Damages expert Laura Stamm.  While solely opining on the deficiencies of Mr. Lovin's damages calculations for Vanderbilt's Breach of Contract and Trademark Infringement Claims, Ms. Stamm clarified that "Defendants claim that certain exclusions or deductions were properly subtracted [from the Read 180 Non-Software Components] and thus no royalties were due on those exclusions or deductions." (JA-816, at 821).  The Stamm report also stated that it was "Defendants' position that the Other Programs are not 'based on or derived from the [Licensed] Materials' and therefore that Defendants owe Vanderbilt no royalty for the Other Programs under the Agreement." (*Id.*).

### 3. On Summary Judgment, the Vanderbilt Action Parties Disputed Whether the Allegedly Derivative Products Incorporated Any of Vanderbilt's Intellectual Property.

After discovery, Scholastic moved for summary judgment to dismiss all of Vanderbilt's claims.  JA-1536. With respect to the Breach of Contract Claim, Scholastic asserted, in relevant part, that Vanderbilt was not entitled to royalties on sales of the Allegedly Derivative Products because Vanderbilt did not contribute

any intellectual property to the at-issue products or services, which were created, developed, and sold by Scholastic:

- "A significant part of the amount in dispute relates to Vanderbilt's contention that it should have been paid royalties on the non-software components of *Read 180* . . . None of the non-software components  . . . incorporate or are derived from the Licensed Materials. . . . It makes no sense to expect Scholastic . . . to pay Vanderbilt royalties on materials that Scholastic either licensed from third parties or created itself without any use of the Licensed Materials."  (JA-1536, at 1547).

- "[T]he undisputed facts show that Scholastic did not use the Licensed Materials in connection with any of [the Other Scholastic Products]."  (JA-1536, at 1548; JA-1773, ¶¶ 34-35).

- "[T]he undisputed evidence demonstrates that Hasselbring did not contribute any intellectual property to [the Other Scholastic Products]."  (JA-1536, at 1554; *see also* JA-1700, ¶¶ 63, 65, 115-16).

- "Vanderbilt made no contribution whatsoever to the development or sale of [the READ 180 Non-Software Components].").  (JA-1536, at 1571; *see also* JA-1700, ¶¶ 34, 38-43, 55-56).

Vanderbilt opposed, arguing that the Allegedly Derivative Products incorporated Vanderbilt's licensed intellectual property.  (*See* JA-1597, at 1641-1643 (relying on Shanahan's report to show "the amount of the licensed Materials used in the [Other Scholastic Products]"; JA-1773, ¶ 34 (arguing the Other Scholastic Products "were not 'entirely new products' distinct from Read 180"); JA-1700, at 1721, ¶ 39 (arguing "[w]ith the exception of trade books, the non-software materials bundled with Read 180 were self-evidently based on the Read 180 program . . . the teacher materials clearly use and are derived from the

Material that Vanderbilt licensed to Scholastic"); *see also* JA-1700, ¶¶ 38, 42-43, 56, 63, 65; JA-1773, ¶¶ 35, 285-86).

### 4. The Vanderbilt Action Parties Settled to Resolve the Remaining Trademark Infringement and Breach of Contract Claims.

On May 26, 2021, the Vanderbilt Court issued its Summary Judgment Memorandum, in which it dismissed all but two claims against Scholastic – Vanderbilt's Trademark Infringement Claim and Breach of Contract Claim. (JA-1951, ¶¶ 40-41). The Memorandum Opinion found that the License Agreement imposed upon Scholastic a duty to pay royalties on products "using or based on the Materials," and permitted Vanderbilt to proceed to trial. (JA-1655, at 1677-1680).

On July 20, 2021, the Vanderbilt Action parties executed a settlement agreement stating that, █████████████████████████████████ ████████████████████████████████████████████████████████ Vanderbilt would stipulate to a dismissal of its Trademark Infringement and Breach of Contract Claims (the "Vanderbilt Settlement"). (SA-294, ¶¶ 42-44).

### C. Scholastic's Claim for Insurance Coverage

Scholastic requested coverage for the Vanderbilt Action from its insurance companies – AIG, which provided primary professional liability insurance coverage, and Travelers, which provided professional liability coverage excess to AIG.

10

### 1. The AIG Policy Covers the Wrongful Act of Alleged Misappropriation in the Performance of Scholastic's Publishing Services.

Illinois National Insurance Company ("AIG") sold Scholastic Multimedia Professional Liability Policy No. 01-589-55-94 for the policy period February 28, 2010 – February 28, 2011, with a $10,000,000 limit (the "AIG Policy"). (JA-943, at 948, Items 3-4). The AIG Policy provides insurance coverage for allegations of wrongful acts against Scholastic, stating:

> We will pay amounts you are legally required to pay to compensate others for damages as a result of one or more claims arising from your wrongful act or that of another for whom you are legally responsible, including liability assumed under contract. The wrongful act must first take place during the policy period and in the performance of the multimedia services provided by the Named Insured and its subsidiaries.

(JA-943, at 954, § I.A).

The AIG Policy defines "wrongful act" in pertinent part as "any of the following actual or alleged breaches of duty, neglects, errors, misstatements, misleading statements or omissions, including, liability therefor assumed under contract, constituting: . . .

> e. infringement of title, slogan, trademark, trade name, trade dress, service mark, or service name;

> f. infringement of copyright, plagiarism, piracy, or misappropriation of ideas under implied contract, or **other misappropriation of property rights, ideas or information**;

11

(JA-943, at 961-962, §§ III.GG.[e]-[f] [emphasis added]).  The AIG Policy

specifically defines the covered multimedia services to include:

> (2) Publishing: . . .
>
>> i. researching, creation, display, printing, preparation, publication, republication, serialization, exhibition or distribution of material
>
> (3) Advertising

(JA-943, at 959-960, §§ III.W.[2][i] & [3]).

### 2. The Travelers Professional Liability Endorsement Covers Scholastic's Losses Caused by the Rendering of Any Professional Service.

St. Paul Fire and Marine Insurance Company ("Travelers") sold Scholastic

Specialty Commercial Umbrella Liability Policy No. QK09002061, with a policy

period of February 28, 2010 – February 28, 2011, and a $25,000,000 per

occurrence limit (the "Travelers Policy").  (JA-1028, at 1030).  The Travelers

Policy contains a "Professional Liability Endorsement" that provides excess

coverage upon the exhaustion of the primary AIG Policy for allegations of

"Professional Liability Loss" against Scholastic.  (JA-1028, at 1067-1068).

> The Travelers Professional Liability Endorsement states, in pertinent part:
>
> We will also pay on behalf of the Insured all sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of Professional Liability Loss that is caused by an Occurrence committed during the Policy Period, but only if:
>
> 1. insurance for such Professional Liability Loss is provided by any Scheduled Underlying Insurance or any Scheduled Retained Limit and

then for no broader coverage than the insurance provided by that Scheduled Underlying Insurance or Scheduled Retained Limit, subject to all exclusions of this policy[.]

(JA-1028, at 1067, § 1). "Occurrence" is defined in the Professional Liability Endorsement to include:

4. as respects Professional Liability Loss, a rendering of, or failure to render, any professional service by or on behalf of the Insured which results in Professional Liability Loss. All Professional Liability Loss caused by the same injurious rendering of, or failure to render, a professional service shall be considered to be caused by one Occurrence, regardless of the frequency or repetition thereof or the number of persons or organizations making Claims or bringing Suits.

(JA-1028, at 1067-1068, § 4.O.4).

"Professional Liability Loss" is defined to mean "**loss caused by the rendering of, or failure to render, any professional service** by or on behalf of the Insured." (JA-1028, at 1068, § 5 [emphasis added]). The Travelers Policy does not define "Professional Services." (*See generally* JA-1028; JA-1951, ¶ 55).

With respect to Travelers' duty to defend, the Travelers Policy states: "We shall have the right and duty to assume control of the defense of any Claim or Suit seeking damages covered by this policy, and we shall have the right to investigate and settle such Claim or Suit, when the Retained Limit has been exhausted by payment of judgments or settlements that would be covered by this policy." (JA-1028, at 1043, § II.A).

The Travelers Policy further states:

13

> If the total of the applicable limits of any Scheduled Underlying Insurance or any Scheduled Retained Limit are reduced or exhausted by payment of one or more Claims or Suits seeking damages that would be covered by this policy, we will … in the event of exhaustion of the limits of the Scheduled Underlying Insurance or the Scheduled Retained Limit, continue in force as underlying insurance upon such exhaustion[.]

(JA-1028, at 1043, § I.G).

### 3. Despite AIG Covering Scholastic's Defense Costs and the Vanderbilt Settlement, Travelers Denied Coverage.

After Vanderbilt filed the Vanderbilt Action, Scholastic tendered a claim for coverage to AIG, its primary insurance company. (JA-1951, ¶ 58). AIG promptly and correctly acknowledged its duty to pay Scholastic's defense costs in the Vanderbilt Action, finding that "[b]ased upon the allegations of the Complaint, the Vanderbilt Action constitutes a Claim alleging wrongful acts as those terms are defined by the Policy." (JA-1875, at 1879, 1881). AIG paid for Scholastic's defense in the Vanderbilt Action in the amount of ███████. (SA-278, at 279). In August of 2021, AIG paid the remainder of its $10,000,000 policy limit towards the Vanderbilt Settlement. (*Id.*).

After AIG exhausted its policy limit, Scholastic asked Travelers to pay for Scholastic's outstanding defense costs and the remaining settlement amount. (JA-1887, at 1888). Travelers refused to reimburse Scholastic for the defense costs and settlement amount incurred by Scholastic in the Vanderbilt Action.

14

## II.     Procedural History

On June 28, 2023, Scholastic filed its Second Amended Complaint in the District Court against Travelers, seeking damages for Travelers' wrongful refusal to cover Scholastic's outstanding defense costs and the remaining settlement amount incurred in the Vanderbilt Action.  (JA-28).

### A.     The District Court Denied Travelers' Motion for Judgment on the Pleadings.

On April 30, 2024, Travelers moved for Judgment on the Pleadings, arguing no coverage for either the Trademark Infringement Claim or Breach of Contract Claim.  (JA-212 [Travelers' Motion for Judgment on the Pleadings], JA-233 [Scholastic's Opposition], JA-263 [Travelers' Reply], JA-277 [Scholastic's Sur-reply]).  The District Court denied Travelers' motion, (JA-282), and further explained its decision at a conference with the parties.  (JA-1690).  Regarding coverage for the Breach of Contract Claim, Travelers argued that "Scholastic's alleged breach of contract for failing to pay royalties it contractually agreed to pay is not a covered 'wrongful act' or 'Professional Liability Loss' and, thus, not covered under the Travelers Policy."  (JA-212, at 224).

In denying Travelers' Motion for Judgment on the Pleadings, the District Court found that Vanderbilt's allegations were "directed at a core 'professional service' undertaken by Scholastic, including developing, publishing, and, of course, selling educational products."  (JA-1690, at 1694).  District Court rejected

15

Travelers' "mischaracteriz[ation of] Vanderbilt's allegations in the underlying action" and "myopic[]" focus with respect to Scholastic's professional services. (JA-1690, at 1693-1694).

The District Court further found that Travelers' arguments specifically with respect to the Breach of Contract Claim "ultimately mischaracterize the nature of Vanderbilt's allegations in an effort to read additional exclusions into the Travelers' policy" and that, given the specific allegations raised in the Vanderbilt Action, "the merits of [the] breach of contract claim seeking royalties allegedly due thus plainly depends on a determination of whether the at-issue materials in fact used Vanderbilt's intellectual property." (JA-1690, at 1694, 1696-1697).

The District Court further explained its decision to deny Travelers' Motion for Judgment on the Pleadings when later rendering its summary judgment decision. (JA-2187, at 2191-2193). There, the District Court noted that Travelers' Motion for Judgment on the Pleadings had included two arguments specific to coverage for Vanderbilt's Breach of Contract Claim: (1) "that the losses due to Vanderbilt's contract claim were not covered under the Travelers Policy both because breach of contract is not a 'wrongful act' covered by the AIG Policy (and thus is necessarily not covered by the Travelers Policy given the 'no broader coverage' clause in the Travelers Policy)"; and (2) "because, as a matter of law, a breach of contract cannot be covered under professional liability insurance

16

policies." (JA-2187, at 2191-2192 [citing JA-212, at 224-228]). The District Court

rejected both of these arguments. (JA-2187, at 2191-2192).

The District Court explained that it had found Travelers' arguments as to the

Breach of Contract Claim "wanting," and that New York law:

> "[did] not support the categorical rule pressed by [Travelers]"; [JA-1690, at 1695], instead, "a claim may be insurable, even if pleaded as a breach of contract, if the alleged breach is 'occasioned by' conduct that falls within the scope of the relevant policy." *Id.* Based on the allegations in Scholastic's Complaint, the Court concluded that the breach alleged by Scholastic was at least "arguably" insurable under the Travelers Policy because it "was premised on the alleged infringement" — i.e., misappropriation — "as opposed to simple failure to pay." [JA-1690, at 1698].

(JA-2187, at 2192-2193 [citing JA-1690]).

### B. On Summary Judgment, the District Court Ruled that Both the Trademark Infringement and Breach of Contract Claims Are Covered.

Following the District Court's denial of Travelers' Motion for Judgment on

the Pleadings, the parties proceeded to discovery and ultimately cross-moved for

summary judgment. (SA-142 [Travelers' MSJ Opening Brief], SA-201

[Scholastic's Cross-Motion and Opposition], SA-336 [Travelers' Opposition to

Scholastic's Cross-Motion], SA-372 [Scholastic's Reply]).

The District Court once again ruled in favor of Scholastic, holding that "both

of the settled claims in the Vanderbilt Action are covered losses" under the

Travelers Policy and that Scholastic was entitled to reimbursement from Travelers

17

of all outstanding defense costs and settlement amounts. (JA-2187, at 2199, 2202-2203). In doing so, the District Court rejected Travelers' "rehashe[d] arguments that it made in its motion for judgment on the pleadings" and found that the Breach of Contract Claim (1) implicated Scholastic's professional services, and (2) was based on the covered wrongful act of alleged misappropriation of Vanderbilt's intellectual property. (JA-2187, at 2196 ["as the Court previously concluded, [Vanderbilt's allegations] were 'directed at a core "professional service" undertaken by Scholastic, including developing, publishing, and, of course, selling educational products,' namely, the design, publication, and sale of its various educational technology products — Read 180, FASTT Math, System 44, iRead, and Math 180"]; JA-2187, at 2197-2198 ["Here, Vanderbilt's breach of contract claim was not premised on Scholastic's mere failure to pay an agreed upon amount; instead, it was premised on a separate act — namely, Scholastic's purported misappropriation of Vanderbilt's intellectual property."]).

The District Court also rejected Travelers' argument that "any damages owed by Scholastic could not be due to 'misappropriation' within the meaning of the AIG Policy because, through the License Agreement, it had an exclusive license to use Vanderbilt's intellectual property." (JA-2187, at 2198). The District Court found that Travelers' argument was:

> just another version of Travelers' principal argument that Scholastic
> could not recover for losses caused by a breach of contract as a

18

categorical matter. Moreover, it does not follow from the fact that Scholastic and Vanderbilt had a contractual relationship that Vanderbilt's claim could not sound in misappropriation. In point of fact, under New York law, the existence of a contractual relationship is one way to satisfy an essential element of a misappropriation claim. And ultimately, to the extent there is any uncertainty as to the meaning of "misappropriation" in the AIG Policy and whether it would encompass Vanderbilt's contract claim, the ambiguity must be construed in favor of providing insurance to Scholastic.

(*Id.* [citations omitted]).

The District Court held that any allocation of the Vanderbilt Settlement was moot because both the Vanderbilt Breach of Contract and Trademark Infringement Claims were covered. (JA-2187, at 2196 & 2196 n.2).

The District Court also found that Travelers was required to pay Scholastic's outstanding defense costs, holding that "when, on August 21, 2021, the AIG Policy was exhausted, Travelers stepped into AIG's shoes and became responsible for any losses covered by the AIG Policy that also fell within the scope of the Travelers Policy, which included the outstanding defense costs." (JA-2187, at 2200).

Travelers has now brought this appeal, which for the first time concedes coverage for the Trademark Infringement Claim and focuses on the Breach of Contract Claim as the sole basis to avoid coverage.

## SUMMARY OF ARGUMENT

I.      The District Court correctly held that Vanderbilt's Breach of Contract Claim against Scholastic is covered under the terms of the AIG and Travelers

19

Policies. As the District Court found, the Breach of Contract Claim was premised on the alleged misappropriation of Vanderbilt's intellectual property – an expressly covered "wrongful act" under the AIG policy language that is incorporated into the terms of the Travelers Policy – and Vanderbilt's alleged damages for the Breach of Contract Claim were "caused by" Scholastic's professional publishing services. Scholastic never would owe damages to Vanderbilt but for Scholastic's alleged use of Vanderbilt's intellectual property in the development and publishing of the Allegedly Derivative Products. Further, there is no applicable breach of contract exclusion in the Policies.[2] Therefore, Vanderbilt's Breach of Contract Claim is covered under both the AIG and Travelers Policies, and Travelers must reimburse the losses Scholastic incurred in settling the Vanderbilt Action.

II.     The District Court correctly held that any allocation of the Vanderbilt Settlement was moot because both the Vanderbilt Breach of Contract and Trademark Infringement Claims were covered and, as such, the entire Vanderbilt Settlement constituted a covered loss under the Travelers Policy. Furthermore, allocation is improper because Scholastic's potential liability for either the Breach of Contract or the Trademark Infringement Claim was sufficient to warrant

---

[2] Both the AIG and Travelers Policies include breach of contract exclusions that expressly do not apply to the coverage sections at issue in this action. (JA-943, at 965-966; JA-1028, at 1054).

20

coverage for the entirety of the Vanderbilt Settlement, even if only one cause of action was covered.

III.    The District Court correctly held that the Vanderbilt Settlement properly exhausted the AIG Policy.  Therefore, pursuant to the terms of the Travelers Policy and New York law, Scholastic's outstanding defense costs from the Vanderbilt Action are covered under the Travelers Policy.

## ARGUMENT

### I.    Standard of Review

Appellate Courts "review a summary judgment order *de novo*, focusing on whether the district court properly concluded that there was no genuine issue as to any material fact, and that the moving party was entitled to judgment as a matter of law." *Morris v. Loc. 819, Int'l Bhd. of Teamsters*, 169 F.3d 782, 783 (2d Cir. 1999) (citations omitted).

Although *de novo* review permits an Appellate Court to reconsider a District Court's conclusions, it is well established that an Appellate Court generally will not consider issues raised for the first time on appeal.  *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006).

While this Court has the discretion to consider a newly raised issue in limited circumstances, such as where the question is purely legal and requires no further fact finding, or it is necessary to prevent manifest injustice, it has exercised

21

such discretion sparingly as circumstances normally "do not militate in favor of an exercise of discretion to address new arguments on appeal where those arguments were available to the parties below and they proffer no reason for their failure to raise the arguments below." *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008); *Doe v. Trump Corp.*, 6 F.4th 400, 409-11 (2d Cir. 2021).

**II.     Both the AIG and Travelers Policies Cover Vanderbilt's Breach of Contract Claim.**

AIG, the insurance company that wrote the AIG Policy, treated the Vanderbilt Action as a covered claim and paid its full policy limits.  The District Court also correctly interpreted the AIG Policy as covering Vanderbilt's Breach of Contract Claim because it is premised upon the covered alleged wrongful act of misappropriation.  The Travelers Policy, which includes broader policy language than the AIG Policy, similarly covers Vanderbilt's Breach of Contract Claim because that claim is based on Scholastic's professional services.  All of Travelers' arguments to the contrary fail because they ignore the controlling language of the AIG and Travelers Policies as well as prevailing New York law.  As such, this Court should affirm the District Court's summary judgment decision.

**A.     The AIG Policy Covers Vanderbilt's Breach of Contract Claim Because It Is Premised Upon the Covered Alleged Wrongful Act of Misappropriation.**

Scholastic's primary AIG Policy provides coverage for damages arising from Scholastic's "wrongful acts," including "misappropriation of property rights,

22

ideas or information." (JA-943, at 954 [§ I.A.], 961-962 [§ III.GG.(f)]). While the Travelers Policy does not define "wrongful acts," the terms of the AIG Policy are incorporated into the Travelers Policy, which provides "no broader coverage than" the AIG Policy. (JA-1028, at 1067 (§ 1), 1073). Therefore, the Travelers Policy also provides coverage for wrongful acts including "misappropriation of property rights, ideas or information."

Travelers ignores the fact that misappropriation is an enumerated "wrongful act" under the AIG Policy, and that allegations of misappropriation therefore trigger coverage under the Travelers Policy. The Breach of Contract Claim constitutes a covered "wrongful act" because it was premised on Scholastic's alleged misappropriation of Vanderbilt's intellectual property.

### 1. In Accordance with New York Law, the AIG Policy Covers Vanderbilt's Breach of Contract Claim if It Is Occasioned by Allegations of Misappropriation.

As the District Court recognized, under New York law, "a claim may be insurable, even if pleaded as a breach of contract, if the alleged breach is 'occasioned by' conduct that falls within the scope of the relevant policy. Put differently: 'It is not the form of the pleading which determines coverage . . . , it is the nature of the insured's conduct[.]'" (JA-2187, at 2197), citing *Wentworth Grp. Inc. v. Evanston Ins. Co.*, No. 20-CV-6711, 2021 WL 2828838, at *8 (S.D.N.Y. July 8, 2021), and *Touchette Corp. v. Merchants Mut. Ins. Co.*, 429 N.Y.S.2d 952,

23

954 (App. Div. 4th Dep't 1980). Travelers agrees that being styled as a "breach of contract" claim is irrelevant, and it is the conduct on which the claim is premised that controls. *See* Travelers Opening Appellate Brief ("Travelers Appeal") at 26.

Moreover, "[w]here the provisions of the policy are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement." *U.S. Fid. & Guar. Co. v. Annunziata*, 492 N.E.2d 1206, 1207 (N.Y. 1986) (quotation marks and citations omitted). "The New York approach to the interpretation of contracts of insurance is 'to give effect to the intent of the parties as expressed in the clear language of the contract.'" *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002).

The AIG Policy terms, incorporated into the Travelers Policy, grant coverage for damages arising from Scholastic's alleged "wrongful acts," which include the "misappropriation of property rights, ideas, or information[.]" (JA-943, at 954 [§ I.A.], 961-962 [§ III.GG.(f)]; JA-1028, at 1067 [§ 1], 1073). Under New York law, such wrongful acts are covered even if pleaded via breach of contract. (JA-2187, at 2197), citing *Wentworth Grp. Inc.*, 2021 WL 2828838, at *8 and *Touchette*, 429 N.Y.S.2d at 954.

Here, Vanderbilt's Breach of Contract Claim is premised on allegations of covered "misappropriation" because Vanderbilt claimed that Scholastic owed damages to Vanderbilt for publishing educational products that allegedly were

24

derived from Vanderbilt's intellectual property. *See infra*, Argument § II.A.2.

Thus, the Breach of Contract Claim is a covered "wrongful act" under the policies,

and the inapposite case law Travelers cites does not override the plain language of

the AIG Policy or the broader language of Travelers' Professional Liability

Endorsement.

### 2. Vanderbilt's Breach of Contract Claim Is Occasioned by Allegations of Misappropriation.

The District Court correctly found that "Vanderbilt's breach of contract

claim was not premised on Scholastic's mere failure to pay an agreed upon

amount; instead, it was premised on a separate act — namely, Scholastic's

purported misappropriation of Vanderbilt's intellectual property." (JA-2187, at

2197).

Vanderbilt's Breach of Contract Claim alleges a breach of the License

Agreement, which requires that Scholastic pay royalties to Vanderbilt for

"products **using or based on the [licensed] Materials**" and "software products

**based on or derived from the [licensed] Materials**." (*See* License Agreement,

JA-1089, §§ 6.2, 9.1 [emphasis added]).

As such, the Breach of Contract Claim depended on whether Vanderbilt

could prove that the Allegedly Derivative Products **used, were based on, or were**

**derived** from the intellectual property Vanderbilt licensed to Scholastic, thereby

rendering those products royalty-bearing under the License Agreement. (*See id.*).

This is the essence of alleged "misappropriation." (JA-2187, at 2198), citing *McGhan v. Ebersol*, 608 F. Supp. 277, 284 (S.D.N.Y. 1985) (a claim for misappropriation of ideas "afford[s] protection to persons who … have disclosed their ideas to others in the expectation that the idea would be used, and the use compensated."). The Breach of Contract Claim was therefore premised on a covered "wrongful act" under the AIG Policy.

As alleged in the Vanderbilt Complaint, Vanderbilt's Breach of Contract Claim asserted that Scholastic breached the License Agreement between Scholastic and Vanderbilt due to Scholastic's alleged misappropriation of certain Vanderbilt intellectual property that Scholastic used, in its capacity as a publisher and developer of educational media, to develop, publish, and distribute the Allegedly Derivative Products:

- "Vanderbilt asserts that Scholastic . . . ha[s] failed to pay royalties on numerous products that were **derived from or are based on the READ 180 products** (the 'Derivative Products')." (JA-1133, at 1135 [emphasis added]).

- "This dispute centers on certain **technology, intellectual property, know how, and educational concepts owned by Vanderbilt** and developed by Vanderbilt professor Hasselbring . . . **that were licensed to Scholastic . . . for further development and commercialization**." (JA-1133, ¶ 12 [emphasis added]).

- "Defendants' representations to the marketplace and the industry **leave little doubt that the Derivative Products are derived from and related to READ 180** . . . ." (JA-1133, ¶ 61 [emphasis added]).

26

- "Scholastic . . . **took Vanderbilt's confidential READ 180 Materials and used it** for other purposes for which it failed to compensate Vanderbilt." (JA-1133, ¶ 73 [emphasis added]).

After the close of discovery, Scholastic moved on summary judgment to dismiss the Breach of Contract Claim, arguing that "Vanderbilt made **no contribution whatsoever** to the development or sale of these other products and services[.]" (JA-1536, at 1547-1548, 1570-1571 [emphasis added]). Scholastic and co-defendant HMH further defended themselves with documentary and testimonial evidence, including a pedagogy expert, a source code expert, and fact witness testimony to demonstrate that the Allegedly Derivative Products were independently developed and did not incorporate Vanderbilt's intellectual property.[3]

Conversely, Vanderbilt asserted that the Allegedly Derivative Products used, were based on, and/or were derived from Vanderbilt's licensed intellectual property. With respect to the Other Scholastic Products, Vanderbilt used expert evidence such as the Shanahan Report and deposition testimony to argue that they "were not 'entirely new products' distinct from READ 180 because key features and technologies are shared across the products[,]" and that Vanderbilt had

---

[3] (*See, e.g.*, JA-2048, at 2056 n.1, 2058-2060 (Scholastic's pedagogy and design expert report); JA-2166, at 2173-2174 (Scholastic's motion to exclude expert testimony explains "many of the failings in Vanderbilt's expert reports" according to Scholastic's damages, pedagogy, and source code experts); Vanderbilt's Response to Scholastic's Statement of Undisputed Facts, JA-1700, ¶¶ 34, 38-43, 55-56, 63, 65, 115-16).

27

evidence of the resulting damages. (JA-1773, ¶¶ 34-35, 285-86; JA-1597, at 1641-1643). Vanderbilt contended that Scholastic "breached the [license] agreement **by developing other products based on or derived from the licensed Materials**, specifically System 44, FASTT Math, Math 180, and iRead, without telling Vanderbilt or paying royalties on the sale of those products." (JA-1597, at 1602 [emphasis added]).

With respect to the READ 180 Non-Software Components, Vanderbilt cited deposition testimony and exhibits to assert that "[w]ith the exception of trade books, the non-software materials bundled with READ 180 were self-evidently based on the READ 180 program and the customer's use of the READ 180 Program. . . . the teacher materials clearly use and are derived from the Material that Vanderbilt licensed to Scholastic." (JA-1700, ¶ 39; *see also* JA-1700, ¶¶ 38, 42-43 [other examples of Vanderbilt asserting that the READ 180 Non-Software Components were based on Vanderbilt's licensed materials]).

After weighing Scholastic's motion and Vanderbilt's arguments and evidence to the contrary, the Vanderbilt Court denied in part Scholastic's summary judgment motion, allowing Vanderbilt's Breach of Contract Claim to proceed to trial. (JA-1655, at 1684).

In sum, based on the Vanderbilt Action parties' arguments and evidence, the Vanderbilt Court could not have awarded any damages for Vanderbilt's Breach of

28

Contract Claim absent a finding that Scholastic misappropriated Vanderbilt's intellectual property. Therefore, the Breach of Contract Claim is occasioned by, and in fact premised on, allegations of a covered "wrongful act."[4] (JA-2187, at 2197). Thus, the Breach of Contract Claim is covered under the terms of the AIG Policy, and this Court should affirm the District Court's decision.

**B.    The Travelers Policy Covers Vanderbilt's Breach of Contract Claim Because It Is Based on Scholastic's Professional Services.**

Under the terms of the Professional Liability Endorsement to the Travelers Policy, Travelers is required to indemnify Scholastic for "Professional Liability Loss," which is broadly defined to mean "loss caused by the rendering of, or failure to render, any professional service by or on behalf of the Insured." (JA-1028, at 1067 [§ 1], 1067-1068 [§ 4.O.4], 1068 [§ 5]). Any damages for Vanderbilt's Breach of Contract Claim necessarily would be caused by Scholastic's professional services in developing and publishing the Allegedly Derivative Products. Therefore, the Breach of Contract Claim is covered under the broad Travelers Professional Liability Endorsement.

---

[4] The District Court correctly held that Vanderbilt's Breach of Contract Claim constituted the covered alleged "wrongful act" of misappropriation under the plain terms of the AIG Policy. (JA-2187, at 2197). The District Court also stated that "ultimately, to the extent there is any uncertainty as to the meaning of 'misappropriation' in the AIG Policy and whether it would encompass Vanderbilt's contract claim, the ambiguity must be construed in favor of providing insurance to Scholastic." (JA-2187, at 2198).

### 1. Scholastic's Publishing Services Are Covered Professional Services Under the Travelers Policy.

The Travelers Policy does not define "professional services," but the underlying AIG Policy specifically defines the relevant services to include "publishing." (JA-943, at 959-960, § III.W.(2); *see generally* JA-1028; JA-1951, ¶ 55). The AIG Policy defines "publishing" services as: "researching, creation, display, printing, preparation, publication, republication, serialization, exhibition or distribution of material." (JA-943, at 959-960, § III.W.[2][i]).

This definition in the AIG Policy is in line with prevailing New York law, which defines the phrase "professional services" to mean services requiring "special acumen and training." *Beazley Ins. Co.*, *v. ACE Am. Ins. Co.*, 880 F.3d 64, 71 (2d Cir. 2018); *see also Albert J. Schiff Assocs., Inc. v. Flack*, 417 N.E.2d 84, 88 (N.Y. 1980) ("An errors and omissions policy is intended to insure a member of a designated calling against liability arising out of the mistakes inherent in the practice of that particular profession or business.").

Because the Travelers Policy provides "no broader coverage than" the AIG Policy – and because the Travelers Policy broadly covers "any" loss "caused by professional services" – the Travelers Policy also encompasses the list of services specifically included in the AIG Policy. Thus, Scholastic's publishing services in developing educational products are covered "professional services" under the Travelers Policy.

**2.** **Vanderbilt's Breach of Contract Claim Was "Caused By" Scholastic's Publishing Services.**

The Breach of Contract Claim is premised upon Scholastic's alleged misappropriation of Vanderbilt's intellectual property in conjunction with Scholastic's development and publishing of the Allegedly Derivative Products. *See supra*, Argument § II.A.2. There is no question that Vanderbilt's Breach of Contract allegations implicate and were caused by Scholastic's professional services, and thus the Breach of Contract Claim is a covered "Professional Liability Loss" under the Travelers Policy. Travelers argues that "Vanderbilt sued Scholastic for breach of contract, not because it failed to render the professional services it was hired to perform … but because it failed to pay Vanderbilt the royalties it had agreed to pay[.]" *See* Travelers Appeal at 26. Travelers' faulty argument has been refuted time and again for multiple reasons.

First, neither of Scholastic's insurance policies requires a "failure to render" professional services to trigger coverage. In fact, the Travelers Policy explicitly states that it will cover losses caused by a "**a rendering of, or** failure to render, any professional service[.]" (JA-1028, at 1067-1068, § 4.O.4 [emphasis added]). Here, Vanderbilt alleged that Scholastic owed damages because Scholastic **did render** its services by developing and publishing educational products that allegedly were derivative of Vanderbilt's intellectual property. *See supra*, Argument § II.A.2.

31

Second, Travelers is wrong to argue that damages arising from the Breach of Contract Claim are not a "professional liability loss" because a failure to pay was not "caused by" Scholastic's professional services. *See* Travelers Appeal at 23, 26. Travelers' re-hashing of this argument is based on Travelers' continued efforts to mischaracterize the issues and claims in the Vanderbilt Action. The District Court correctly refuted Travelers' argument on multiple occasions based on a straightforward reading and understanding of the claims and arguments in the Vanderbilt Action.

Specifically, the District Court recognized that Scholastic's core "professional services" included "the design, publication, and sale of its various educational technology products — Read 180, FASTT Math, System 44, iRead, and Math 180." (JA-2187, at 2196). There is no dispute that Scholastic never would owe damages to Vanderbilt but for Scholastic's alleged use of Vanderbilt's intellectual property in the development and publishing of the Allegedly Derivative Products as part of its core professional services. Thus, the losses Scholastic paid in the Vanderbilt Settlement necessarily were "caused by" Scholastic's developing and publishing services.

The Travelers Policy broadly covers claims in connection with Scholastic's professional services as a developer and publisher of educational products. This is precisely what Vanderbilt's Breach of Contact Claim alleged and, as the District

Court correctly found, mandates coverage under the Travelers Policy. (*Id.*). ("[Vanderbilt's allegations] were directed at a core professional service undertaken by Scholastic, including developing, publishing, and, of course, selling educational products[.]") (quotations omitted). Travelers' arguments to the contrary are unavailing.

### C. Travelers' Arguments Ignore the Controlling Language of the AIG and Travelers Policies.

Throughout its brief, Travelers avoids quoting or referring to the language of the AIG and Travelers Policies, instead basing its arguments on distinguishable case law and secondary sources. The New York insurance cases cited by Travelers are distinguishable because the underlying claims in those cases did not involve allegations of expressly covered wrongful acts, or did not implicate covered professional services, as Vanderbilt's Breach of Contract Claim does here. Travelers' cases from other jurisdictions similarly do not apply and cannot override the controlling policy language and New York law.

Under New York law, the plain policy language controls. *See U.S. Fid. & Guar. Co*, 492 N.E.2d at 1207; *Mount Vernon Fire Ins. Co.*, 277 F.3d at 236. Here, the District Court correctly held that the Breach of Contract Claim constitutes a covered "wrongful act" under the terms of the primary AIG Policy, and is also a covered "Professional Liability Loss" under the broad terms of the Travelers Policy. (JA-2187, at 2196-2199). Because the facts of the Vanderbilt

33

Action and the controlling policy language both demonstrate that the Breach of Contract Claim was premised on covered alleged misappropriation in the performance of Scholastic's professional publishing services, that claim is covered under the Travelers Policy, and this Court should affirm the District Court.

      **1.     Travelers' New York Cases Do Not Apply Because, Unlike Vanderbilt's Breach of Contract Claim, They Do Not Involve Allegations that Trigger Coverage for Expressly Covered "Wrongful Acts."**

Vanderbilt's Breach of Contract Claim was premised on Scholastic's alleged misappropriation of Vanderbilt's intellectual property – an expressly covered "wrongful act" under the AIG Policy. *See supra*, Argument § II.A; (JA-2187, at 2197-2198 [emphasizing that the AIG policy "expressly" defines "wrongful acts" to include "misappropriation of property rights, ideas, or information."]). As explained, the Allegedly Derivative Products would be royalty-bearing under the License Agreement **only if** the alleged misappropriation had been proven by Vanderbilt. *See supra*, Argument § II.A.2.

Yet Travelers repeatedly has tried to separate Vanderbilt's Breach of Contract Claim from the covered wrongful act of "misappropriation" by mischaracterizing the conduct on which the Breach of Contract Claim is premised. Travelers cites *Women's Integrated Network, Inc. v. U.S. Specialty Insurance Co.,* No. 08 Civ. 10518 (SCR), 2012 WL 13070116 (S.D.N.Y. Oct. 26, 2012), and *Evanston Insurance Co. v. Napoli Bern Ripka & Assocs.*, No. 18-cv-7027 (AKH),

34

2019 WL 10966201 (S.D.N.Y. June 28, 2019), to argue that "Vanderbilt's breach of contract claim is not covered because it is premised on Scholastic's failure to pay the royalties it contractually agreed to pay when it entered into the License Agreement" and such failure to pay royalties is the breach of a "preexisting contractual obligation." *See* Travelers Appeal at 21, 26-27. But the Vanderbilt Breach of Contract Claim is distinguishable from the limited claims at issue in those cases.

The District Court specifically rejected Travelers' arguments with respect to the Breach of Contract Claim that "mischaracterize the nature of Vanderbilt's allegations[.]" (JA-1690, at 1694). Instead, the District Court correctly found "Vanderbilt's breach of contract claim was not premised on Scholastic's mere failure to pay an agreed upon amount; instead, it was premised on a separate act — namely, Scholastic's purported misappropriation of Vanderbilt's intellectual property." (JA-2187, at 2197). Because the Breach of Contract Claim depended upon a finding of misappropriation, the purely contractual disputes in Travelers' cases are inapposite.

In *Women's Integrated Network* and *Evanston*, the contractual damages at issue were deemed to fall outside the scope of the respective insurance policies because of the nature of the underlying claims. *See Women's Integrated Network*, 2012 WL 13070116, at *8 ("WIN does not point to any legal authority or any

35

language in the Policy that affirmatively grants coverage to this type of contractual damages."); *Evanston*, 2019 WL 10966201, at *5 ("These payments constitute preexisting contractual obligations that do not fall within the scope of the policy or any of the enumerated acts constituting a wrongful employment practice, and damages resulting from breach of contract claims are in fact expressly precluded from it."); (*see also* JA-1690, at 1695).

Here, unlike in *Women's Integrated Network* and *Evanston*, Scholastic has policy language affirmatively granting coverage, allegations that fit squarely within an enumerated "wrongful act," and legal authority supporting coverage under the relevant policies. These distinctions bear out Travelers' faulty reliance on such cases to argue that the Breach of Contract Claim purportedly cannot be premised on a covered "wrongful act."

In *Evanston*, breach of a referral agreement was not the sort of wrongful act that the employment practices policy expressly covered. But here, Scholastic's liability for the alleged breach of the License Agreement depended on whether Scholastic employed Vanderbilt-owned intellectual property in developing the Allegedly Derivative Products. *See supra*, Argument § II.A.2. If the Allegedly Derivative Products did not use, were not based on, or were not derived from the intellectual property that Vanderbilt licensed to Scholastic, then Scholastic would

36

not owe Vanderbilt any damages. Accordingly, both *Women's Integrated Network* and *Evanston* are inapposite.

Moreover, the District Court rejected Travelers' contention "that any damages owed by Scholastic could not be due to 'misappropriation' within the meaning of the AIG Policy because, through the License Agreement, it had an exclusive license to use Vanderbilt's intellectual property." (JA-2187, at 2198). The District Court concluded: "that contention is just another version of Travelers's [sic] principal argument that Scholastic could not recover for losses caused by a breach of contract as a categorical matter." (*Id.*). As the District Court found, "[i]n point of fact, under New York law, the existence of a contractual relationship is one way to satisfy an essential element of a misappropriation claim." (*Id.*, citing *Turner v. Temptu, Inc.*, 586 F. App'x 718, 721-22 [2d Cir. 2014] [summary order] and *McGhan*, 608 F. Supp. at 284; s*ee also* SA-372, at 380-81). The District Court also recognized that Vanderbilt would have been entitled to damages even without the License Agreement if it could prove that Scholastic utilized its intellectual property. (JA-2187, at 2197-2198).

Even Travelers acknowledged in its summary judgment briefing, and now again on appeal, that the alleged misappropriation of Vanderbilt's intellectual property was a key component of the Breach of Contract Claim. **(**JA-872, ¶ 64) ("If the Other Scholastic Products were not based on or derived from the licensed

37

Materials, Scholastic would not be obligated under the License Agreement to pay Vanderbilt royalties."); Travelers Appeal at 31 ("Vanderbilt also contends that [Scholastic and HMH] breached the agreement by developing other products based on or derived from the licensed Materials[.]").  These admissions make clear that the Breach of Contract Claim encompassed more than a mere alleged failure to pay pursuant to contract.

Travelers' own expert in this case also asserted that the Breach of Contract Claim regarding the Other Scholastic Products depended on a finding of whether Scholastic misappropriated Vanderbilt's intellectual property.  (*See, e.g.*, JA-1891, ¶ 7 ["Damages in relation to Other Scholastic Products **would be dependent upon whether the Other Scholastic Products were found to be derivative works under the License**."] [emphasis added]).  The fact that it is undisputed that the Breach of Contract Claim was dependent upon an ultimate finding of misappropriation makes Travelers' cases limited to failure to pay entirely distinguishable.

In a failed attempt to avoid acknowledging covered claims of misappropriation, Travelers narrowly cites the Vanderbilt Action complaint in an effort to frame the gravamen of Vanderbilt's Breach of Contract Claim as Scholastic's failure to pay royalties under the License Agreement.  *See* Travelers Appeal at 29-31.  But Travelers' cherry-picking of allegations wholly ignores the

38

basis for **why** Vanderbilt alleged that Scholastic owed royalties in the first place – Vanderbilt's contention that the Allegedly Derivative Products incorporated or were derived from Vanderbilt's intellectual property. *See supra*, Argument § II.A.2 (analyzing the License Agreement, pleadings, discovery, and summary judgment briefing in the Vanderbilt Action, which demonstrate that Scholastic's liability for the Breach of Contract Claim depended on Vanderbilt proving that the Allegedly Derivative Products incorporated Vanderbilt's licensed intellectual property); (JA-1133, ¶ 73 [Vanderbilt Breach of Contract cause of action alleging "Scholastic . . . **took Vanderbilt's confidential READ 180 Materials and used it** for other purposes for which it failed to compensate Vanderbilt."] [emphasis added]).

The District Court recognized this key aspect of the Vanderbilt Action claims in denying Travelers' Motions for Judgment on the Pleadings and Summary Judgment: "the merits of a breach of contract claim seeking royalties allegedly due thus **plainly depends on a determination of whether the at-issue materials in fact used Vanderbilt's intellectual property**." (JA-1690, at 1696-1697 (emphasis added); JA-2187, at 2197-2198). Accordingly, Travelers' efforts to mischaracterize the Vanderbilt Action to shoehorn the claims into inapposite New York case law must fail.

39

Ultimately, nothing in Travelers' cited cases refutes the fact that Scholastic purchased coverage that contemplates the exact type of damages sought by Vanderbilt as a result of Scholastic's alleged misappropriation. As demonstrated by the controlling policy language in the AIG Policy, which is incorporated into the Travelers Policy, the Breach of Contract Claim was premised on a covered "wrongful act" and is therefore covered.

### 2. Travelers' New York Cases Do Not Apply Because, Unlike Vanderbilt's Breach of Contract Claim, They Do Not Implicate Covered Professional Services.

The District Court correctly held that the Breach of Contract Claim is a covered "Professional Liability Loss" implicating Scholastic's professional services under the broad coverage language of the Travelers Policy. The District Court refused to entertain Travelers' attempt to misrepresent the facts at issue in the Vanderbilt Action:

> Here, despite Travelers' claims to the contrary, Vanderbilt's allegations did not rest exclusively on Scholastic's advertising and marketing activities; instead, as the Court previously concluded, they were "directed at a core 'professional service' undertaken by Scholastic, including developing, publishing, and, of course, selling educational products," namely, the design, publication, and sale of its various educational technology products — Read 180, FASTT Math, System 44, iRead, and Math 180….

(JA-2187, at 2196-2197 [citations omitted]; *see also* JA-1690, at 1693-1694 [rejecting Travelers argument that "mischaracterizes Vanderbilt's allegations in the underlying action."]).

40

On appeal, Travelers again incorrectly compares the facts at issue in the Vanderbilt Action to *Albert J. Schiff Associates*, 417 N.E.2d 84 (N.Y. 1980), and *Napoli Shkolnik, PLLC v. Greenwich Insurance Co.*, 142 N.Y.S.3d 810 (App. Div. 1st Dep't 2021), to argue that where a claim arises from "normal business activities" as opposed to "professional services," those claims are not covered under a professional liability policy. While these cases may stand for this proposition, they do not apply here because the Vanderbilt Action clearly addresses Scholastic's professional services. (JA-2187, at 2196-2197).

In *Schiff*, the court provided a list of activities which, it held, constituted "business" activities. *Schiff*, 417 N.E.2d at 88. These activities included renting an office or engaging employees. *Id.* Travelers cites to this case to suggest that the Vanderbilt Action also arose out of "business" activities. The Vanderbilt Action, however, did not involve straightforward administrative tasks like renting an office or engaging employees. Rather, the crux of the Vanderbilt Action is that Scholastic incorporated Vanderbilt's intellectual property into the Allegedly Derivative Products while rendering its professional services – i.e., publishing educational media. *See supra*, Argument §§ II.A.2, II.B.2.

In *Napoli Shkolnik*, the court found that the policyholder's professional services were not implicated because "[t]o the extent that the first and second amended complaints alleged that plaintiff committed malpractice or fraud in its

41

handling of clients' cases, those 'shotgun' allegations were insufficient as no cause of action was premised on those facts" and the "theory of recovery was not based on the allegations relating to malpractice or fraud." 142 N.Y.S.3d at 811.

In stark contrast here, the entire theory of recovery for Vanderbilt's Breach of Contract Claim depended on demonstrating that Scholastic used Vanderbilt's intellectual property in the developing, publishing, and selling of the Allegedly Derivative Products, which is explicitly alleged in the Breach of Contract Claim and was extensively litigated by the Vanderbilt parties. *See supra*, Argument §§ II.A.2, II.B.2; (*see, e.g.*, JA-1597, at 1602 [Vanderbilt contending that Scholastic "breached the [license] agreement **by developing other products based on or derived from the licensed Materials**, specifically System 44, FASTT Math, Math 180, and iRead, without telling Vanderbilt or paying royalties on the sale of those products."] [emphasis added]). Thus, cases like *Schiff* and *Napoli* are distinct from this case and, as the District Court found, Travelers' position is an attempt to "mischaracterize the nature of Vanderbilt's allegations in an effort to read additional exclusions into the Travelers' policy." (JA-1690, at 1694).

The Southern District consistently rejects insurance companies' efforts to deny coverage under professional liability policies based on a mischaracterization of underlying claims as simple disputes over payments owed. *See, e.g.*, *Mandel Resnik Kaiser Moskowitz & Greenstein P.C. v. Exec. Risk Indem. Inc.*, No. 03 CIV

42

8019 (BSJ), 2005 WL 1712024, at *3 (S.D.N.Y. July 15, 2005) (finding that a professional liability policy covered a claim against the insured law firm because it was not merely a "billing dispute" but required resolution of issues such as whether the policyholder's legal services benefitted the debtors in the underlying bankruptcy and who could be charged for the legal work provided). Travelers' cases are inapposite and the damages resulting from Vanderbilt's Breach of Contract Claim constitute a "Professional Liability Loss" under the Travelers Policy.

### 3. Travelers' Cases from Other Jurisdictions Do Not Apply and Cannot Override the Controlling Policy Language or New York Law.

The plain terms of the AIG Policy and Travelers Policy demonstrate that Scholastic purchased coverage for loss arising out of Scholastic's alleged "wrongful act" of misappropriation in the performance of its professional publishing services. Such loss is covered under New York law, even if styled as a breach of contract claim.

Travelers cites to treatises and cases from other jurisdictions to argue that the Breach of Contract Claim cannot be covered because "courts have held that a claim alleging breach of contract is not covered under a professional liability policy because there is no 'wrongful act' and no 'loss' since the insured is simply being required to pay an amount it agreed to pay." Travelers Appeal at 31-33.

43

None of these courts, however, were **New York** courts — the only jurisdiction that matters in this case. And Travelers' argument fails under New York law because Vanderbilt's Breach of Contract Claim was occasioned by wrongful acts that fall within the express terms of the governing insurance policies, thus triggering coverage. (JA-2187, at 2197, citing *Wentworth Grp. Inc.*, 2021 WL 2828838, at *8 and *Touchette*, 429 N.Y.S.2d at 954 ["a claim may be insurable, even if pleaded as a breach of contract, if the alleged breach is 'occasioned by' conduct that falls within the scope of the relevant policy."]).

Even if Travelers' non-New York cases were from the correct jurisdiction and therefore binding on this Court – which they clearly are not – the cases are distinguishable and do not support a finding of no coverage here. Travelers cites to *Pacific Insurance Co. v. Eaton Vance Management*, 369 F. 3d 584, 592 (1st Cir. 2004), *Health Net, Inc. v. RLI Insurance Co.*, 206 Cal. App. 4th 232, 253 (2012), and *American Casualty Co. of Reading, Pa. v. Hotel and Restaurant Employees and Bartenders International Union Welfare Fund,* 942 P.2d 172 (Nev. 1997), for the proposition that there can be no professional liability insurance coverage when a policyholder is sued for simply failing to pay amounts it previously agreed to pay. Travelers Appellate Brief at 31-32. Travelers fails to understand or acknowledge that the dispute between Scholastic and Vanderbilt was not a mere alleged failure to pay an agreed-upon amount. Rather, the dispute was whether the

44

Allegedly Derivative Products were developed using Vanderbilt's intellectual property, which would therefore constitute products covered under the License Agreement warranting royalty payments. *See supra*, Argument § II.A.2. Vanderbilt's allegations against Scholastic involve alleged wrongful acts in the rendering of Scholastic's publishing services – the precise coverage contemplated in the AIG and Travelers Policies.

Further, as the District Court correctly found here, "Vanderbilt would have been entitled to relief even if the License Agreement did not exist." (JA-2187, at 2197). Unlike the alleged wrongful conduct in *American Casualty Co. of Reading, Pa.*, which only could have stemmed from the agreement between the underlying parties, the License Agreement here does not change the nature of Vanderbilt's allegations with respect to the Breach of Contract Claim – *i.e.*, purported misappropriation. If Scholastic did not misappropriate Vanderbilt's intellectual property in developing and publishing the Allegedly Derivative Products, then Vanderbilt would not be entitled to any breach of contract damages. Therefore, any damages because of the Breach of Contract Claim are covered loss under the Travelers Policy.

*Waste Corp. of America, Inc. v. Genesis Insurance Co.*, 382 F. Supp. 2d 1349, 1358 (S.D. Fla. 2005), *aff'd*, 209 F. App'x 899 (11th Cir. 2006), also does not apply. In *Waste Corp.*, the Southern District of Florida found that under Texas

45

and Florida law, breaches of contract cannot be covered regardless of the nature of the damage and the risk insured. 382 F. Supp. 2d at 1358. This is in direct contrast to New York law, which specifically recognizes that breach of contract can be covered based on the underpinnings of the claim. *See Touchette*, 429 N.Y.S.2d at 954.

Travelers' attempt to retroactively limit the scope of what professional liability policies "typically" cover – and the out-of-state caselaw Travelers relies upon to support this effort – is also baseless and, indeed, makes no sense in the context of Scholastic's profession and the unambiguous language of the primary AIG Policy. In short, Travelers has relied upon out-of-state cases with distinguishable fact patterns and law in contravention with New York precedent in an attempt to rewrite its policy and avoid paying for an unquestionably covered claim. (JA-1690, at 1694; JA-2187, at 2197-2198).

If Travelers wanted to exclude breach of contract claims, it should have written the Policy that way. Travelers knows how to write breach of contract exclusions but did not include one applicable to the Professional Liability Endorsement. *See* (JA-1028, at 1054, Exclusion O [excluding "Breach of Contract" claims only for coverage parts not applicable here]). New York law does not permit Travelers to rewrite the Travelers Policy after the fact. *U.S. Fid. & Guar. Co.*, 492 N.E.2d at 1207.

### 4. There Is No "Windfall" in Compelling Travelers to Pay a Covered Claim.

Scholastic purchased professional liability insurance to cover precisely the type of allegations at issue in the Breach of Contract Claim – misappropriation in the rendering of professional publishing services. Scholastic is entitled to the insurance coverage it purchased, no matter how the cause of action is couched.

Travelers argues that requiring "Travelers to pay Scholastic now – when all Scholastic has done is pay what it originally agreed to pay" would be contrary to public policy, the Travelers Policy, and the AIG Policy (which excludes claims alleging or arising out of the "gaining of any profit or advantage to which you are not legally entitled") (the "AIG Exclusion"). *See* Travelers Appeal at 33. Travelers is wrong.

First, as the District Court recognized, there is no applicable breach of contract exclusion in either the AIG Policy or Travelers Policy, and there is no New York public policy against insuring such claims. (JA-2187, at 2197). Requiring Travelers to pay a claim that is clearly covered under its Policy does not constitute a "windfall" for Scholastic. Indeed, allowing Travelers to avoid paying a clearly covered claim after collecting a hefty premium from Scholastic would constitute a windfall for Travelers.

Second, Scholastic vehemently disputed that it incorporated any of Vanderbilt's intellectual property into the Allegedly Derivative Products. *See*

47

*supra*, Argument § II.A.2.  Throughout the Vanderbilt Action, Scholastic defended itself with substantial arguments and evidence demonstrating that it did not use Vanderbilt's intellectual property in the Allegedly Derivative Products and thus did not owe any royalties.  *Id.*; (*see also* SA-1, at 8, 10).

Further, the Vanderbilt Action settled, and Vanderbilt never established what damages Scholastic allegedly owed for any of the Allegedly Derivative Products. *See supra*, Factual Background § I.B.4.  Regardless of any purported findings in the Vanderbilt Court's Memorandum Opinion, any damages that Scholastic ultimately could have owed for Vanderbilt's Breach of Contract Claim would have been premised on Vanderbilt's allegations that Scholastic misappropriated Vanderbilt's intellectual property by publishing the Allegedly Derivative Products without compensating Vanderbilt.  *Id.*; *see supra*, Argument § II.A.2.  This alleged "misappropriation" is an enumerated and covered wrongful act that requires Travelers to indemnify Scholastic.  (JA-2187, at 2198, citing *McGhan*, 608 F. Supp. at 284).

Moreover, in its District Court summary judgment briefing, Travelers only argued that the AIG Exclusion applied to Vanderbilt's Trademark Infringement Claim. (*See* JA-838, at 864 n.5; JA-1993, at 2016 n.7; *see also* SA-201, at 221 n.3; JA-2029, at 2035 n.3).  Travelers **never** argued that the AIG Exclusion applied to the Breach of Contract Claim.  Therefore, Travelers has waived any coverage

48

defense with respect to the AIG Exclusion on appeal.[5]

New York law and the terms of the AIG and Travelers Policies all dictate that the Vanderbilt Breach of Contract Claim is covered. Travelers' cited cases for its arguments to the contrary do not apply and do not overcome the policy language and prevailing New York law. Because Travelers' defenses all fail, and because there is no "windfall" in Travelers paying out on a clearly covered claim (as AIG did), the Breach of Contract Claim is covered under both the AIG and Travelers Policies. As such, this Court should affirm the District Court's decision.

## III. There Is No "Failure" to Allocate Because the Entire Vanderbilt Settlement Is Covered.

As the District Court correctly held, there is no reason to allocate the Vanderbilt Settlement between the Trademark Infringement and Breach of Contract Claims because "the entire settlement amount for the Vanderbilt Action is a covered loss falling within the scope of the Travelers Policy." (JA-2187, at 2196 n.2).

As Travelers recognizes, to recover the amount of the Vanderbilt Settlement from Travelers, Scholastic does not need to establish that it was actually liable to Vanderbilt, "so long as … a potential liability on the facts known to [Scholastic] is

---

[5] *See supra*, Argument § I. Issues never raised in a party's District Court summary judgment briefing are routinely found waived on appeal. *See, e.g.*, *Kramer v. Dep't of Corr.*, 828 F. Appx. 78, 80 (2d Cir. 2020) (summary order); *Triodetic Inc. v. Statue of Liberty IV, LLC*, 582 F. Appx. 39, 40 (2d Cir. 2014) (summary order) (citing *Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004)).

shown to exist, culminating in a settlement in an amount reasonable in view of the size of the possible recovery and degree of probability of [Vanderbilt's] success against the [Scholastic]." *Luria Bros. & Co. v. All. Assur. Co., Ltd.,* 780 F.2d 1082, 1091 (2d Cir. 1986) (quotation marks omitted). Scholastic has satisfied this burden with respect to both the Trademark Infringement and Breach of Contract Claims. (SA-201, § III).

Nevertheless, Travelers asserts that "[a]ssuming *arguendo* that the trademark infringement claim is covered and the breach of contract claim is not, an allocation of the settlement amount between the claims is required." Travelers Appeal at 35. Travelers' arguments for allocation fail for several reasons.

First, allocation is a moot point because Travelers has conceded coverage for the Trademark Infringement Claim, and the Breach of Contract Claim also is covered. Therefore, the District Court did not err because any allocation of the Vanderbilt Settlement remains unnecessary. (JA-2187, at 2196 n.2).

Second, Travelers still cannot meet its burden to manufacture a speculative allocation of the ██████████ Vanderbilt Settlement because the amount Scholastic paid was reasonable on its face and is entirely covered whether for the Breach of Contract Claim, the Trademark Infringement Claim, or both.

To the extent there are any uncovered claims (which there are not here because both the Trademark Infringement and Breach of Contract Claims are

50

covered), under New York law, Travelers "bear[s] the ultimate burden of proving what amount of the settlement cost should be excluded from the policy coverage." *PepsiCo, Inc. v. Cont'l Cas. Co.*, 640 F. Supp. 656, 662 (S.D.N.Y. 1986) ("Evidence of a good faith settlement of the underlying litigation, however, creates a presumption that the costs are covered by the policy."), *disagreed with on other grounds*, *Waltuch v. Conticommodity Services, Inc.*, 88 F.3d 87 (2d Cir.1996); *High Point Design, LLC v. LM Ins. Corp.*, No. 14-CV-7878 (KBF), 2016 WL 426594, at \*3-4 (S.D.N.Y. Feb. 3, 2016) (finding the "better-reasoned case law" where "Courts have [] placed this burden on insurers that seek to allocate responsibility to fund settlements that extinguish both covered and uncovered claims"); *St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*, No. 14-CV-8002 (JSR), 2015 WL 5440694, at \*13–14 (S.D.N.Y. Sept. 9, 2015) ("The burden to allocate losses, however, falls on the insurer[.]"); *Clifford Chance Ltd. Liab. P'ship v. Indian Harbor Ins. Co.,* 838 N.Y.S.2d 62 (App. Div. 1st Dep't 2007) (finding that allocation provision has "the effect of a partial exclusion" and thus the burden of proving allocation falls on the insurer).  Thus, any allocation burden would fall squarely on Travelers if allocation were needed, which it is not.

Travelers again cites *Uvino v. Harleysville Worcester Insurance Co.*, No. 13 Civ. 4004 (NRB), 2015 WL 925940 (S.D.N.Y. Mar. 4, 2015), to argue incorrectly that Scholastic has the burden of allocating the Vanderbilt Settlement.  Travelers

51

Appeal at 35-36. For the same reasons articulated in Scholastic's summary judgment briefing in the District Court, *Uvino* does not apply here. *See* (SA-201, at 239-240 and SA-372, § III.B), distinguishing *Uvino* because (1) *Uvino* related to coverage for a general verdict comprised of definite and precise damages, while the Vanderbilt Action settled with no determination of liability, and (2) unlike proving indemnity of actual liability, here Scholastic need only demonstrate its potential liability that resulted in a reasonable settlement, which Scholastic has done for both the Trademark Infringement and Breach of Contract Claims.

Further, even if the Breach of Contract Claim were not covered, which it is, Travelers would have no "factual basis for the allocation." *Clifford Chance Ltd. Liab. P'ship v. Indian Harbor Ins. Co.*, 14 Misc.3d 1209(A), 2006 WL 3821841, at *3 (N.Y Sup. Ct. 2006), *aff'd,* 838 N.Y.S.2d 62, (App. Div. 1st Dep't 2007) ("Insurers are entitled to allocate loss, or settlement costs, between covered and non-covered claims, or parties, **where there is a factual basis for the allocation**[.]") (emphasis added).

Travelers cannot meet its hypothetical burden to allocate because both the Trademark Infringement and Breach of Contract Claims individually and separately trigger coverage for the entire ████████ Vanderbilt Settlement under the Travelers Policy. Indeed, Travelers admits that there was high potential exposure for Breach of Contract damages. *See* Travelers Appeal at 36; (SA-201, at

52

§§ III.B, IV). Travelers' alleged support for allocating damages to the Breach of Contract Claim is limited to Travelers' conclusory assertions, made with no citation whatsoever. *See* Travelers Appeal at 36 ("Travelers offered substantial evidence that the damages risk presented by the trademark infringement claim was minimal in comparison to the breach of contract claim[.]").

But Travelers ignores the ample evidence cited by Scholastic in its District Court filings that the ██████████ Scholastic paid to settle the Vanderbilt Action would have been reasonable to pay for the potential exposure for the Trademark Infringement Claim alone, notwithstanding the potential exposure for the Breach of Contract Claim. This extensive evidence of Trademark Infringement exposure includes: (1) Scholastic's in-house counsel's testimony and communications; (2) underlying defense counsel's report;[6] (3) the underlying parties' briefing; (4) the underlying court's decisions; and (5) expert reports. (*See, e.g.*, JA-1441, at 1511-1512 (Vanderbilt's expert calculating potential reasonable trademark royalty damages from $76,005,253 to $130,294,719); SA-201, at 232 n.4 (citing Dkt. 146-7); *see also* SA-201, §§ III.A, IV; SA-372, at 382-383 & § III).

The facts here demonstrate that there is no need and no basis for Travelers to insist on allocation when there is no allocation provision in the AIG or Travelers

---

[6] ██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████ (SA-1, at 11).

Policies, and the parties in the Vanderbilt Action did not allocate the Vanderbilt Settlement. (SA-254). Moreover, the potential exposure for either Vanderbilt Claim far exceeded the settlement amount and the Travelers Policy limit. (SA-201, at 235-238). Travelers would be responsible for paying the Vanderbilt Settlement amount for either one of the settled Claims.

Accordingly, the District Court was correct to refrain from undertaking a speculative allocation of the Vanderbilt Settlement because (1) both the Trademark Infringement and Breach of Contract Claims are covered, rendering allocation moot, and (2) no matter how Travelers attempts to split up the alleged damages, Travelers is obligated to cover the ▮▮▮▮▮▮ Scholastic paid to settle Vanderbilt's Claims.

## IV. Travelers Is Obligated to Pay Defense Costs AIG Had Not Yet Reimbursed When AIG Exhausted Its Limits by Paying the Vanderbilt Settlement.

The District Court correctly held that Travelers is obligated to reimburse Scholastic for all outstanding defense costs remaining after the exhaustion of the primary AIG Policy limit on August 25, 2021. (JA-2187, at 2199-2201). Indeed, when "the AIG Policy was exhausted, Travelers stepped into AIG's shoes and became responsible for any losses covered by the AIG Policy that also fell within the scope of the Travelers Policy, which included the outstanding defense costs." (JA-2187, at 2200).

54

Despite the District Court's well-reasoned decision, Travelers incorrectly argues that without an allocation of the Vanderbilt Settlement, "it remains unknown whether the AIG Policy was exhausted by the payment of 'settlements that would be covered by [the Travelers Umbrella Policy]' to trigger Travelers' duty to defend." *See* Travelers Appeal at 37. Travelers is wrong for several reasons.

First, there is no dispute that Travelers' duty to defend was triggered by the Vanderbilt Settlement because **both** the Trademark Infringement and Breach of Contract Claims are covered under the Travelers Policy. (JA-2187, at 2199). Moreover, Scholastic's potential exposure for the Trademark Infringement Claim alone far exceeded the total amount of the Vanderbilt Settlement. *See supra*, Argument § III. Travelers has conceded that the Trademark Infringement Claim is covered. Thus, AIG's exhaustion of the AIG Policy limits paying for the Vanderbilt Settlement, which extinguished the Trademark Infringement Claim, triggers Travelers' duty to defend under the Travelers Policy. (JA-1028, at 1043, § II.A [Travelers Policy stating "[Travelers] shall have the **right and duty to assume control of the defense** of any Claim or Suit seeking damages covered by this policy … when the Retained Limit has been exhausted by payment of judgments or settlements that would be covered by this policy."] [emphasis added]).

55

Second, Travelers remains incorrect that it does not have an obligation to pay Scholastic's outstanding defense costs that were incurred, but not yet reimbursed, prior to August 25, 2021. *See* Travelers Appeal at 37-38. Under New York law, Travelers cannot challenge AIG's decision to exhaust the AIG Policy limits by paying for the Vanderbilt settlement rather than first reimbursing Scholastic's outstanding defense costs. *See Carrier Corp. v. Allstate Ins. Co.*, 113 N.Y.S.3d 472 (Table), 2018 WL 7137965 at *5 (Sup. Ct. 2018) ("An excess insurer may not challenge the propriety of a primary insurer's payment or allocation decisions absent collusion to defraud the excess insurer."). Even in Travelers' cited case, *Olin Corp. v. Lamorak Insurance Co.*, 332 F. Supp. 3d 818, 848 (S.D.N.Y. 2018), the court stated that "[t]he 'very nature of excess insurance coverage is such that a predetermined amount of underlying primary coverage must be paid before the excess coverage is activated.'" *Id.* (citations omitted). Here, Travelers agreed to pay Scholastic amounts excess of AIG's primary layer. (JA-1028, at 1067, § 1). AIG paid its $10,000,000 limit. Therefore, as the District Court held, Travelers must cover any defense costs or settlement amounts from the Vanderbilt Action left outstanding. There is no authority to support Travelers' proposition that an excess insurance company is excused from paying otherwise covered defense costs if they were incurred – but not paid – prior to the exhaustion of the primary policy. (JA-2187, at 2200).

56

Further, Travelers agreed to "continue in force as underlying insurance" "in the event of exhaustion of the limits of the Scheduled Underlying Insurance or the Scheduled Retained Limit[.]" (JA-1028, at 1043, § I.G.). "Accordingly, when, on August [25], 2021, the AIG Policy was exhausted, Travelers stepped into AIG's shoes and became responsible for any losses covered by the AIG Policy that also fell within the scope of the Travelers Policy, which included the outstanding defense costs." (JA-2187, at 2200).

Travelers also adds a new argument on appeal, now asserting that the District Court's reasoning "ignores" policy language that Travelers **never raised or put at issue** in its District Court briefing. Travelers argues that "[b]y shifting the payment of defense costs incurred prior to the exhaustion of the AIG Policy to Travelers, Scholastic's insurance coverage is effectively increased" because "the AIG Policy limit included the payment of 'claim expenses.'" Travelers Appeal at 38. Because it was not raised below and is not a purely legal question, Travelers has waived this argument on appeal. *See In re Nortel Networks*, 539 F.3d at 132.

Ultimately, Scholastic is seeking the same amount from Travelers irrespective of whether that amount is labeled as defense costs or settlement amounts (the total amount being well within the Travelers $25,000,000 Policy limits). (JA-897, at 938; *see also* JA-2187, at 2200 [District Court noting that "it would make little sense to conclude that Travelers is required to pay the balance of the settlement but not the balance of

57

Scholastic's defense costs when, in theory, AIG could have allocated its payment in the first instance to Scholastic's defense costs and then to the settlement — and the balance of unpaid costs would have been the same"]). There is no conceivable way that Scholastic is getting more insurance than it bargained for by requiring Travelers to pay Scholastic's defense costs. Scholastic is only seeking the amounts that Travelers owes following AIG's proper exhaustion of its primary layer – no more, no less.

At the very least, the Travelers Policy is ambiguous with respect to coverage for such outstanding defense costs. Under New York law, "'[i]t is fundamental that ambiguities in an insurance policy must be construed against the insurer.'" *Haber v. St. Paul Guardian Ins. Co.,* 137 F.3d 691, 698 (2d Cir. 1998). Accordingly, as the District Court correctly held, Travelers must reimburse Scholastic for its outstanding defense costs. (JA-2187, at 2201).

## **CONCLUSION**

For the foregoing reasons, Scholastic respectfully requests that the Court affirm the District Court's decision.

Dated: May 22, 2026
      New York, New York

                        Respectfully submitted,

                        ANDERSON KILL P.C.

                        By: */s/ Diana Shafter Gliedman*
                            Diana Shafter Gliedman, Esq.

Cort T. Malone, Esq.
Thomas Dupont, Esq.
Amy Weiss, Esq.
7 Times Square, 15th Floor
New York, NY 10036
Telephone: (212) 278-1000
Email: dgliedman@andersonkill.com
cmalone@andersonkill.com
tdupont@andersonkill.com
aweiss@andersonkill.com

*Attorneys for Plaintiff-Appellee*
*Scholastic Inc.*

59

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32.1(a)(4)(A) because, as calculated by Microsoft Word, it contains 12,868 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). I also certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Times New Roman font.

Respectfully submitted,

ANDERSON KILL P.C.

By: */s/ Diana Shafter Gliedman*
Diana Shafter Gliedman, Esq.
Cort T. Malone, Esq.
Thomas Dupont, Esq.
Amy Weiss, Esq.
7 Times Square, 15th Floor
New York, NY 10036
Telephone: (212) 278-1000
Email: dgliedman@andersonkill.com
cmalone@andersonkill.com
tdupont@andersonkill.com
aweiss@andersonkill.com

*Attorneys for Plaintiff-Appellee*
*Scholastic Inc.*

60

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2026, I electronically filed the redacted version of this brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

Respectfully submitted,

ANDERSON KILL P.C.

By: */s/ Diana Shafter Gliedman*
Diana Shafter Gliedman, Esq.
Cort T. Malone, Esq.
Thomas Dupont, Esq.
Amy Weiss, Esq.
7 Times Square, 15th Floor
New York, NY 10036
Telephone: (212) 278-1000
Email: dgliedman@andersonkill.com
cmalone@andersonkill.com
tdupont@andersonkill.com
aweiss@andersonkill.com

*Attorneys for Plaintiff-Appellee*
*Scholastic Inc.*

61